The condition in the policy which is cited by the appellants refers to assignments or transfers of the policy itself or of the interest of the assured therein, and not to transfers of the title to the building insured, or the land on which it stood, whether such transfers are voluntary or by operation of law. The clause is to the effect that the interest of the assured in this policy is not assignable; and it is a transfer or termination of the interest of the assured in the policy, and not in the premises insured, which, when made without consent, is to avoid the policy under this condition.
Policies of insurance against fire, however, are personal contracts with the assured. They are agreements to indemnify *Page 255 
him against loss, and not guarantees of the immunity of the property insured. Such contracts do not attach to the realty, nor do they pass as incident to a conveyance or transfer of the title to lands. In the present instance, as ordinarily with us, in policies of insurance against fire, the contract is made with the assured, "his executors, administrators and assigns." Both by force of these words, and from the nature of the contract itself, the right of action upon the policy at the death of John R. Wyman vested in his personal representative. It is not easy to see how any one but his administratrix, the present respondent, could have sustained actions on these policies which had been issued to John R. Wyman, for any loss whether it had occurred before or after his death. It would have been a sufficient answer to any such action by the heirs, upon a policy of insurance, that it was a personal contract to which they were not parties, and that the right of action which it gave passed upon the death of the original assured to his personal representative, who not only succeeded to all his mere rights of action, but was specifically named in this contract itself.
This, however, is not an action to recover on a policy for a loss; nor is the question between the insurance companies and these parties, or either of them. The companies have indeed, as far as it lay with them, waived any condition in the policies, or any objection to the payment of the loss. The insurance money was paid to David M. Prosser, under a stipulation by which he became in effect a stakeholder, and by which the ultimate disposition of the money is left to the judgment of the courts upon the rights of the parties. The present is an equitable action to ascertain and determine those rights. The plaintiff claims this money as personal property and part of the assets of the estate of John R. Wyman, to which she is not only primarily but absolutely entitled as his administratrix; while the defendants insist that it belongs to them as his heirs-at-law, and the owners of the real estate upon which the building stood which was insured in the policies. It results that although we are not required formally *Page 256 
to determine whether an action could have been sustained against the insurance company by either of these parties, yet the controversy between them cannot be determined except by ascertaining their legal or equitable rights to the amount due by the contract of insurance.
I have already intimated the difficulties in the way of an action to recover the insurance money by the heirs. On the other hand, it is said by the heirs that the administratrix could not have sustained such an action, because she had no interest in the property insured. It is unquestionable that the assured must have an insurable interest in the premises covered by the insurance at the time of the loss. But in the present case the title and interest in the lands, and with it the ownership of the building, passed to the heirs; yet, as we have seen, the right of action upon the contract vested in the administratrix. These parties are not strangers to each other, however, but both of them derive title from the intestate by a devolution or transfer, which is not only not forbidden but is recognized by the policy. The policy does not avoid the contract upon the transfer of the title to the property by descent to the heir, and the devolution of the right of action to the administratrix, but expressly preserves the right of action and continues and extends the privileges of the agreement to the executors and administrators of the assured. An action may be brought upon the contract of insurance by the latter as the successor of the original party, and as named in the instrument itself, to recover damages for the destruction or injury of the interest of the former in the property insured. Thus the contract of insurance by the death of John R. Wyman became by its terms a contract with his administratrix for the protection of the interest of his heirs. So that the right of action became vested in one person, while the interest in the property insured, which was requisite to sustain the action, belonged to another. The administratrix would thus have sustained her action upon the policy as a person with whom a contract is made for the benefit of another. She would have been regarded as a party to whom, as a trustee of an express *Page 257 
trust, the right to sue in her own name is preserved under the Code (§ 118). The case would fall within the decision ofConsiderant v. Brisbane (22 N.Y., 389). See Freeman v.Fulton Fire Insurance Company (14 Abb., 404).
But it is difficult to reconcile the claim of the respondent to hold this insurance money, as part of the personal assets of the deceased, with this reasoning. The doctrine contended for by the appellant's counsel that not only the right of action, but the beneficial interest in the contract with the insurers, passed to the administratrix at the death of John R. Wyman, fails when it is put to this test. She had no legal estate and no beneficial interest in the premises. The title to the contract, and to a recovery upon it, was vested in her by the operation of law, and not by express assignment or transfer. She is, of course, a trustee for creditors of the assets in her hands, but not of the lands of the deceased, nor of a contract like this, which is for the indemnity of those who have the beneficial interest in the lands. Upon the reason of the matter it is equally evident that the beneficial interest in such a contract of insurance belongs to the heir and not the personal representative of the deceased. The heir is the absolute owner of the property, entitled to its income and its enjoyment and damnified by its destruction. He only can bring an action for any damage done to it after the title has passed to him from his ancestor. If the destruction of this building by fire had been the result of the malice or carelessness of another, the heirs of John R. Wyman would have had their action against such person and recovered damages for the very loss against which this contract is an indemnity. They could have destroyed, removed or sold the building at any time, and neither for such an act nor for any injury by a third person, could the administratrix have sued at all. Her rights rest upon the contract of the insurers exclusively; and that is a contract, as I have already said, not of guaranty against the destruction of the property, but of indemnity against a loss to the person injured by such destruction. It follows that it is a contract which, even if made or continued with her, is, in *Page 258 
truth, for the benefit of the parties to whom that property belonged. The building which was burned was real estate. As such it vested in the heirs immediately upon the death of the intestate, and its subsequent injury by fire could not convert it into personal estate, so as to divest the right of the heirs or give a new direction or character to the money payable by way of indemnity for their loss. Again, it was a part of the contract of insurance in this case, as is usual in policies of insurance against fire, that upon the destruction or injury of the property the insurers, if they chose, might repair or restore it in specie. If they had elected to take that course the expenditure which would thus have been made would, of course, have been entirely for the benefit of the heirs. The building repaired or replaced would have been theirs, because standing upon their lands. The theory of the payment of money in lieu of such actual reparation, is that the party is thus enabled to replace what has been destroyed for himself instead of its being done by the insurers. This is very plain in the case of a partial loss where there is only an injury and not a destruction of the premises insured, but it is equally so in all cases. It would be a singular result if the election of the insurers could determine whether the heirs or the administratrix should take the benefits of their contracts; whether they would make compensation in money to the latter, or in kind to the former. And it is a strong implication from the existence of such a feature in the contract that its benefits must, in any event, and in either form of performance inure to those who would, in the case of its literal performance, reap its fruits. My opinion is that in such a case as this the executor or administrator is a trustee for the heir who alone has been damnified, who has sustained the loss, and who is entitled to the indemnity.
It is supposed that such a construction of the contract and of the rights of the parties will be in conflict with the authorities. It is somewhat remarkable that so few cases can be found in which a question of such interest, and which must frequently arise, has been considered. An attentive examination of the few decisions to be found bearing upon the question, *Page 259 
will show that they do not really contradict the views which have now been expressed. The difficulties which have been found, and are stated by text writers, grow out of the character of the question, and the peculiar relations of the parties to the subject, rather than from judicial decisions. A leading case, which is much relied on in favor of the right of the personal representative is Mildmay v. Folgham (3 Ves., 471), in which Lord Chancellor LOUGHBOROUGH makes use of the strong expression, "it is impossible to make the executor a trustee." But that case was decided upon its special circumstances, and cannot be cited to control others which are not in all respects similar. Judith Tucker had insured a house by becoming a member of a company formed by deed for purposes of mutual insurance. She received a policy declaring that certain persons named as trustees would pay to her or her personal representatives, in accordance with the deed, any loss or injury to her property within seven years, and at the end of that time, if no loss occurred, would repay her deposit. The deed provided against survivorship to those remaining, in the event of a death of any person becoming a party to it; and that, in such event, the interest in the deed, and in the association, of a member dying, should survive to his personal representatives, who thereby became members of the company. It was also provided that, if the interest or property in the house insured of any person should expire, inasmuch as the insurance thereby became void, such person could adjust his account and have the deposit repaid him, and that the person succeeding to the property might come in and renew the insurance, becoming a member of the association in turn. The suit was a bill filed by the heir against the trustees named in the policy: that is, in effect, against the association. The Lord Chancellor held that this was a partnership, or a quasi partnership, and that no person could claim its benefits unless he was a member of the society according to its terms, which, he says, were very intelligible and consistent. The effect of the articles in his view evidently was, that the right *Page 260 
to their benefits could only survive to the personal representatives, and no one else could succeed to the membership of the original assured. If the interest in the property insured passed to executors, no benefit was taken by the survivors from his death: the interest survived; and the right of membership attached to the representatives by force of the deed of partnership. If, however, the interest in the insured property did not vest in the executor, the only right which remained, according to the deed of insurance, was the right to claim a return of the deposit, which, he says, was with the executor, with whom the account must be made up. The heir or devisee could only come in anew and insure, or become a member of the society on his own account. In other words, the construction put upon the scheme of insurance exhibited by the policy, and the deed of association in that case, was, that by the death of the assured, and the transmission of her interest to a person who was not, and was not entitled to become, by succession, a member of the society, the insurance terminated, and the only rights of the executors and the heirs were a return of the deposit to the one, and a reinsurance by the other. The right of the executors to claim the insurance money upon a loss was not before the court; but the reasoning of the judgment, applied to the facts of the case, is equally fatal to the claim of the executor and of the heir against the company.
There is a case decided by Sir LANCELOT SHADWELL, Vice-Chancellor, Parry v. Ashley (3 Sim., 97), in which he held that the proceeds of a policy of insurance might be affected with a trust in favor of the parties entitled to the real estate. In that case certain real estate was charged with an annuity, and, subject to that, given to the defendant, who was sole residuary devisee and legatee and also executrix. The buildings were insured, and after the testator's death the executrix renewed the policy. They were burned, and it was held that the insurance money should be regarded as real estate, and preserved for the benefit of the annuitant, and not be disposed of by the executrix as general personal assets. *Page 261 
 Haxall v. Shippen (10 Leigh, 136), is an exceedingly well considered case in the Court of Appeals of Virginia. One Shore died leaving a plantation by will to his widow for life, and remainder to his children. There was an insurance on the buildings, running to him, his heirs and assigns. The widow occupied the house and the policy was kept in force. She married Haxall and afterwards the buildings were destroyed by fire. A suit in equity was brought upon the policy by Haxall and wife, and a decree made that the insurance money be paid to them, on their giving bonds to pay the principal to the children and heirs of Shore, at the death of their mother, Mrs. Haxall. The bond was given and the money received, and then used in rebuilding the house. At the death of Mrs. Haxall, suit was brought upon the bond, when the sureties commenced this action to stay its prosecution, on the ground that, by the expenditure of the money in rebuilding, the heirs had already had the benefit of it. The court held that the decree in the first suit, and the action of the parties under it, by giving the bond and receiving the money, was conclusive as to the rights of the parties, and that the subsequent application of the money in rebuilding was voluntary and could not prejudice the heirs. This was all which was necessary to the disposition of the case, although the opinion discusses the rights of the parties, independent of the first suit and judgment. The case was not like the present, as the policy ran to the assured, his heirs and assigns, and was regarded as a covenant real. An adjudication in favor of the heirs could not, therefore, be cited as in point in a case where the policy was a purely personal contract. But, on the other hand, the reasoning of the court is not against the view which we take of the rights of the heirs in such a case. The proceeds of the insurance are, indeed, alleged to be money, and not lands, and not affected with any trust which would defeat creditors and require their use in rebuilding. But, at the same time, they were not considered to have been so entirely converted into personalty as to become the property of others than the owners of the insured property at the time of its *Page 262 
destruction. It may be that the judges of that court would have so held in a case like this; but we are not obliged to dissent from their decision, or even to quarrel with their reasoning, as far as they went, in the case before them.
The case of Carter v. Rockett (8 Paige, 437), was between a mortgagee and the owner of property insured; and no question like the present arose. The owner had the entire interest both in the contract and the premises, and the only question was whether a mortgagee had by his mortgage merely a specific lien upon the money due to his mortgagor by the policy, simply because he had a lien upon the land, and because the value of his security was diminished by the destruction of the buildings.
So far as we have thus considered the rights of these parties, and so far as their rights as against each other are concerned, the heirs-at-law are equitably entitled to this fund. If there had been no other allegations or proofs in the case, than such as we have thus far adverted to, the judgment of the Supreme Court would have been erroneous and must have been entirely reversed. The claim of the plaintiff to this fund as part of the ordinary personal assets of the deceased cannot be supported.
But there are other equities which it is necessary to consider. It was alleged and proved that the deceased died largely in debt and probably insolvent, and that the heirs were irresponsible. It was found by the judge who tried the cause that there was a judgment to a considerable amount against John R. Wyman, which was a lien upon his real estate, and was held by persons not parties to this suit. Although this insurance money is to be treated as proceeds of real estate, it is nevertheless subject, as is the real estate itself under our laws, to the payment of the debts of the ancestor. A court having control of such funds should not allow them to pass into the hands of irresponsible and infant heirs, leaving the creditors of the deceased to pursue them by the dilatory remedy of a new and distinct proceeding. Having possession of the fund it is proper to retain it for the purposes of a just *Page 263 
administration among the parties entitled to it. It is usual in cases where the proceeds of real estate come into the hands of the court, and it is shown that there are debts which the real estate was liable to pay, or to be sold in the hands of the heir to satisfy, to order the money paid over to the personal representative, for distribution so far as may be necessary, holding him to account for any balance or resulting residue to the heirs. The direction in the judgment appealed from in this case that the money in the hands of Mr. Prosser should be paid to the administratrix in order primarily to the payment of the debts of the deceased, need not therefore in fact be modified except in a single particular. That particular is one of which the respondent alone in her individual capacity, and not the appellants, can complain. As the widow of John R. Wyman, she is entitled to a dower interest prior to the rights of his creditors in this fund. That should have been preserved by the judgment. It may be that any direction as to the ultimate disposition of the residue, after payment of the debts of the deceased, will be unimportant in this case. But the judgment taken with the complaint and the issue formed upon it by the answer, would imply, if not adjudge, that this money was regarded and ordered to be paid over by the court as part of the general personal estate, and should be distributed and accounted for as such. This was erroneous, and whether the error is of any practical importance to these parties or not, this also should be corrected. No account has indeed been taken of the estate, nor are we in a situation to dismiss the appellants from a right to call for such an account of this fund or of its ultimate disposition. Their right to do so should therefore be preserved. The judgment should be modified so as to provide for the satisfaction of the dower interest of the widow in the moneys in question: for the payment of the surplus to her as the administratrix, to be applied by her in satisfaction of debts entitled to payment out of such assets in the order and manner established by law; and that the residue, if any, be divided among the heirs-at-law of the *Page 264 
deceased according to their rights as such heirs. Neither party to have costs of their appeal.
WRIGHT and BALCOM, Js., dissented; SELDEN, J., did not sit in the case.
Judgment modified, in accordance with above opinion.