53b 325
9ap344

PETER LAPPIN, administrator &c., *vs.* THE CHARTER OAK FIRE AND MARINE INSURANCE COMPANY.

Where a policy of insurance against loss by fire runs to the "assured, his executors, administrators and assigns," an action is properly brought, after the death of the assured, in the name of his administrator, if a right of action has accrued to any one by reason of the destruction of the property insured.

The administrator, in such a case, prosecutes for the benefit of the person or persons entitled to the moneys recovered on account of such loss; provided the contract remains in force; notwithstanding the change of title to the property insured.

A contract of insurance provided that the policy should not be assignable, before or after loss, without the consent of the company, manifested in writing thereon; that "in case of assignment without such consent, whether of the whole policy, or of any interest in it, the liability of the company shall then cease;" that "in case of any sale, transfer or change of title in the property insured, * * * or of any interest therein, such insurance shall be void and cease;" and that "in case of the entry for foreclosure of a mortgage, or the levy of an execution or attachment, or possession by another of the subject insured, without the consent of this company, indorsed hereon, this instrument shall immediately cease." The policy was for one year from December 7, 1867, and was renewed for one year from the latter date. On the 21st day of July, 1869, and during the life of the policy, the assured died intestate, and the property insured descended to his heirs at law. On the 9th of November, 1869, a total loss of the property by fire occurred. No consent had been indorsed upon the policy, by the company, at the time of the fire, and there had been long before, not only possession by others than the assured, of the subject insured, but a complete change of title, also.

*Held* that the policy, by the clear and explicit terms and provisions thereof, became void, and ceased to have any binding force, upon the death of the assured, and the vesting of the title to the property insured in his heirs at law. That this was a change of title, from the assured to others, which brought the case within the express terms of the policy.

*Held, also,* that the possession of the property insured, by others than the insured, without the consent of the company indorsed upon the policy, also produced the same result. It put an end to the contract, and rendered it no longer obligatory.

The cases of *Wyman* v. *Wyman,* (26 *N. Y.* 253;) *Smith* v. *The Saratoga Mu. Fire Ins. Co.,* (1 *Hill,* 497;) *Phelps* v. *The Gebhard Fire Ins. Co.,* (9 *Bosw.* 404;) and *Burbank* v. *The Rockingham Mu. Fire Ins. Co.,* (24 *N. H.* 550,) commented upon, and distinguished from the present.

Where the description of the property insured is made a part of the contract, and a warranty by the assured, and it is expressly provided, among other things, that in case of any misrepresentation or concealment, or omission to make known any fact which increases the hazard, the insurance shall be

void; and the property is described and insured as a *dwelling-house*, when in fact it is used in part as a *saloon*, which increases the risk; *it seems* the policy is void, and of no effect, by reason of this misrepresentation.

APPEAL from a judgment entered upon the report of a referee. The action was brought by the plaintiff, as administrator of Isaac Shephard, deceased, upon a policy of insurance against fire, issued by the defendant to the intestate, in his lifetime.

The referee found and reported the following facts:

1st. That Isaac Shephard, in his life, was the owner in fee and in possession of lot No. 31 in block No. 11, West Oswego, upon which the buildings hereinafter mentioned were situated. 2d. The defendant, on the 7th day of December, 1867, issued its policy of insurance to the said Isaac Shephard, who was then living, as follows: $400 on his framed dwelling-house, situate on block No. 11. $100 on his household furniture, beds, bedding and wearing apparel of his own and his family. $100 on his framed barn, situated in said block. That said policy by its terms was to expire December 7, 1868. That the same was regularly renewed for one year from said 7th of December, 1868, and a renewal certificate issued by the defendant to the said Shephard in his lifetime. 3d. The assured, Isaac Shephard, died at Oswego on the 21st day of July, 1869, intestate, and letters of administration were regularly issued to the plaintiff by the surrogate of the county of Oswego, on the 10th day of January, 1870. 4th. A fire occurred on the 9th day of November, 1869, by which the barn and house covered by the said policy were destroyed, together with such articles then in the house undisposed of, as were in the report particularly specified. That the fire originated in the west part of the barn. 5th. That at the time of the fire the barn was occupied for stabling horses and storing their feed, and the house, the first floor as a saloon, and the second floor as a dwelling, and was occupied by a family. 6th. That the house had in fact been occupied

for many years before the fire, and up to the time of the fire, as a tavern or saloon. And at the time of the issuing of the policy in question, the rate of premium was reduced from what it had formerly been, because it was alleged and stated at the time, by the assured, that the dwelling was not to be used as a saloon or tavern. That saloons are generally deemed more hazardous than dwellings, and larger premiums charged. That the defendant or its agent did not know of the dwelling being occupied as a saloon after the issuing of the policy. That the occupation of a portion of the dwelling as a saloon did not in fact have anything to do with the origin of the fire. 7th. The plaintiff, as guardian of the children of the said Isaac Shephard, made out, as such guardian, proofs of loss under said policy, and served them on the agent of the defendant on the 14th or 15th of November, 1869. The defendant, as to those proofs, insisted that by the policy the heirs of deceased persons are not insured, but only the "executors, administrators and assigns," and desired proof of loss as administrator. That on the 21st day of January, 1870, the plaintiff, as administrator, served proof of loss on the agent of the defendant, and an account of the fire. 8th. The house insured was worth, at the time of the fire, $600; the barn $250. There was in the house at the time of the fire, covered by the policy, personal property of the value of $48.56. 9th. That Isaac Shephard left Mary Shephard and two other children him surviving, and who were living at the time of the fire.

The referee's conclusions of law were:

1. That the death of the assured did not work such a change or transfer of title to the property as avoided the policy, or rendered it inoperative. That the property still remained insured, and covered by the policy, notwithstanding the death of Isaac Shephard. 2. That the administrator of the assured is the proper party to bring the action, and not the heirs of the deceased. The rea-

soning of the court in the case of *Wyman* v. *Wyman,* (26 *N. Y.* 253,) and the opinion therein expressed, was controlling upon the referee, and decisive of the foregoing points, and the main questions in controversy in this action. 3. That the occupation of the dwelling, or portion of it, as a saloon, did not avoid the policy, it appearing that the fire was not in any way influenced by such fact. He therefore held and decided that the plaintiff, as administrator, &c., was entitled to recover in this action the sum of $548.56, with interest from March 21st, 1870, $10.38. And judgment was ordered in favor of the plaintiff, as administrator, against the defendant, for the sum of five hundred and fifty-eight dollars and ninety-four cents, with costs of this action.

From the judgment entered accordingly, the defendant appealed.

*J. A. Hathaway,* for the appellant.

I. The buildings which were burned were real estate, and as such vested in the heirs, immediately upon the death of the intestate, and such title remained in the heirs, about four months before the fire occurred. The plaintiff has no interest in the claim, and cannot recover; its subsequent injury by fire could not convert it into personal estate. The original policy was granted December 7, 1867, and renewed December 7, 1868, for one year, for $600— $400 on his frame dwelling-house, $100 on furniture and wearing apparel, $100 on his frame barn. Shephard died intestate on the 21st day of July, 1869, and left three infant children who are still living. The property was destroyed on the 9th of November, 1869. The plaintiff was appointed administrator, on the 10th day of January, 1870. There is no pretense, nor is it alleged, that Isaac Shephard was indebted at the time of his death, or that the heirs are irresponsible. The damages or value of the buildings claimed in this case has never been converted

from realty to personal. It is true, when equity impresses a different quality upon property from that which it has in fact, such impression ceases whenever the possession of the estate and the right to it in each quality meet in the same person ; that is, when there is no other person than the one who has the actual possession, who has an equitable interest in retaining the fictitious character of the estate. Thus when real uses have been impressed upon personal property and the personal fund, and the uses, come together in the same person, the uses are considered as discharged and merged ; for there is no person to call for their application. So when by virtue of a contract of sale there has been an equitable conversion of personal into real estate, and the property comes into the possession of a person who is entitled to it, both as heir and executor, it immediately becomes in equity what it is in fact, that is, personal property. If the impression of realty which was given to the property in question had been given by the application of equitable principles, as would have been the case if there had been no statute on the subject, then as soon as the property was received by the person who alone was interested in it, after he became of full age and was competent to receive it, it would be considered both at law and in equity what it was in fact, that is, personal property or estate. Then the guardian could no longer affect the rights of those who might be interested in the estate, and no person whatever would have any right, which the law would acknowledge, to insist that one quality should be impressed on the estate rather than another. But when property is in the hands of a third person, its character cannot be changed without some act on the part of the person beneficially interested, indicating an intention to that effect. But on the contrary, when the property is "at home," as it is expressed, that is, when the fund and the uses are united in the same person, no election is necessary. (*Forman* v. *Marsh*, 11 *N. Y.* 544.) In 1815, New York passed a law that in case of

sale by guardian of the real estate of an infant the proceeds should be considered, relative to the statutes of descents and distributions, and for every other purpose, as if the real estate had not been sold. The Revised Statutes (2 *R. S.* 195, § 180) provide as to such proceeds, that they shall be deemed real estate of the same nature as the property sold. These statutes are mere enactments of the chancery rule, and the object was to deprive the guardian of the power to do an act which would affect the rights of the representatives of the infants.

*Shumway* v. *Cooper,* (16 *Barb.* 556,) was an action to recover from an administrator certain bonds and mortgages and the proceeds which he, as administrator, had converted of the infants who never had had possession of them, and by no act had converted them into personalty, and in this case they descended, as the real estate would have done, to the heirs at law, and did not go to the personal representatives for distribution among the next of kin. Its direction must be controlled by the statutes of descents, and not by the statutes of distributions. The administrator is not entitled to collect or hold moneys collected upon bond and mortgage for purchase money of real estate, or to collect any moneys becoming due thereon. He is only entitled to that property which is assets for the payment of debts, and which, after the payment of debts and legacies, is to be distributed to the next of kin. Property that descends to heirs does not and cannot go to the executor or administrator, and if he he gets possession of it the heir has his action at law to recover it. (*Foreman* v. *Foreman,* 7 *Barb.* 217.) Courts of equity, for the purpose of protecting the rights of parties who, as heirs or distributees, would otherwise be entitled to the fund, are careful not to permit guardians to change real estate into personal, or personal into real. And with that view it is the constant practice of the courts to hold lands purchased by the guardians with the infants' personal estate, or the rents and

profits of the real estate, to be personalty, and distributable as such; and on the other hand to treat real property, turned into money, as still for such purpose real estate. (*Foreman* v. *Foreman*, 7 *Barb.* 217.) Lord Eldon says, in 19 *Vesey*, 123 : "In the case of an infant, it is settled that as a trustee out of court cannot change the nature of the property, so the court of chancery, which is only a trustee, must act as the trustee out of court." (*Russell* v. *Russell*, 36 *N. Y.* 581. *Cruger* v. *McLaurey*, 2 *Hand*, 219.) In 10 *Paige*, 163, the administrator claimed the millstones, bolts and other machinery in the flouring mill as personal estate; held to be real and descended to the heirs. In *McNabb* v. *Pond*, (4 *Bradf.* 7,) the administrator claimed the interest in a pew in church; held that he had no right to it; that it went to the heirs. In 2 *Selden*, 597, the administrator claimed to recover the growing grass and fruit not gathered at the death of the intestate; held he had no claim upon them, but they all descended to the heir. In 10 *Barb.* 432, the administrator claimed to hold the proceeds of a land contract as personal assets, in his hands. The court say "the contract was made before his death, and was an actual interest vested in Thomas at the time of his death, and in his heirs afterwards." (This was a contract for the purchase of ninety acres of land.) The court held that the administrator had no claim or right to it. (2 *R. S.*, *Stat. at Large*, *p.* 84, § 6, *subd.* 8.) The statute defines what are assets. By section 7, things annexed to the freehold shall not go to the executor, but shall descend with the freehold to the heir. By section 8, the right of the heir shall not be impaired by the general terms of section 6, (being the section defining what are assets.)

II. The recovery in this case by the administrator will not be a bar to a recovery hereafter in favor of the heirs. (*Russell* v. *Russell*, 36 *N. Y.* 581. *Roome* v. *Phelps*, 27 *id.* 357. *Smith* v. *Bowen*, 35 *id.* 83.) Can the plaintiff execute

a conveyance that will carry the interest of the heirs to the lot on which the house stood? If not, his recovery or receipt for the damages claimed in this case will be no protection to these defendants against the heirs.

III. The referee erred in refusing to dismiss the complaint on motion, and to nonsuit the plaintiff upon the motion made by the defendant, at the close of the plaintiff's evidence. Because the proof and allegations of the complaint fail to establish facts sufficient to constitute a cause of action. This contract of insurance was made with Isaac Shephard, and the plaintiff has no interest in the policy, and the plaintiff was never known or recognized by the company, at any time, or in any manner. 1. Nor can the phrase "executors, administrators and assigns" in the policy, aid the plaintiff in this case, for this clause is subject to and qualified by the other provisions of the policy. We made the contract with one competent to contract, and the minds of the parties met, and in and by that contract it was agreed that "in case of any sale, transfer, or change of title in the property insured by this company, or of any interest therein, without the consent of the company, such insurance shall be null and void and cease." Now it appears, by the complaint and by the proof, that Shephard died, and that his three infant children were his only heirs, and that the title to all this property instantly changed, and vested in the three children July 21, 1869, some four months before it was destroyed by fire. It is claimed that the doctrine of the case of *Wyman* v. *Wyman*, (26 *N. Y.* 253,) is applicable and covers the principle involved in this case. That case was not an action upon a policy of insurance; nor was the insurance company a party to the action; and consequently no question or objection was taken by the insurance company, to the contract, or as to the construction of the contract, but the insurance company in that case waived all questions (if any ever existed) and admitted that the money was

due, and that they had no defense, and the company paid
over or deposited the money to the account of whom it
might concern, and the parties brought an interpleader to
test the rights of the heirs, the administratrix, and certain
creditors to the fund. The only condition in this policy
of *Wyman* v. *Wyman* was as follows: " The interest of
the insured in this policy is not assignable unless by con-
sent of this corporation manifest in writing, and in case
of any transfer or termination of the interest of the in-
sured, either by sale or otherwse, without such consent,
this policy shall be void and of no effect." The court say
the foregoing clause " is to the effect that the interest of
the assured in this policy is not assignable; and it is a
transfer or a termination of the interest of the assured in
the policy and not in the premises insured, which when
made without consent, is to avoid the policy under this
condition." But in the case at bar there is in this policy
now under consideration, an agreement that in case of
any sale, transfer, or change of title in the property in-
sured, or of any interest therein without consent, this
policy shall be void. Also in case of any assignment of
the policy, or any interest therein, without consent, it
shall be void. The case of *Wyman* v. *Wyman* is an
authority against the plaintiff in this case. 2. It is con-
ceded, in this case, that there was a change of title, but
that it was by operation of law, and it is claimed such a
change was not contemplated by the parties. In other
words, they only intended to provide against transfer by
bargain and sale. I insist the language of the contract in
this case clearly shows that they did contemplate a change
of title by sale or operation of law. Why do they use
the terms sale, transfer, or change of title? Had they
stopped with the first, or first and second expressions,
there would be some foundation for the argument; but
by the addition of the last expression it clearly appears
that they understood that the company were to be notified

of. any change of title whatever, or however it might occur. The very next clause shows that they clearly intended to guard against change of possession or title by operation of law; it provides as follows: "And in case of the entry for the foreclosure of a mortgage or the levy of an execution or attachment, or possession by another of the subject insured, without the consent of the company indorsed thereon, this insurance shall immediately cease." This provision, requiring notice, is reasonable, is not simply a technical or unmeaning provision. It is of the essence of the contract, and one of the most essential provisions to protect the company in its ordinary and usual business. Let this doctrine prevail and we can have no confidence in the solvency of our insurance companies, for, notwithstanding a company refuse to take any risk except dwellings occupied by the most prudent persons or the safest possible risks taken, yet they may immediately be turned, by the insured or their representatives, into distilleries or powder manufactories, and this without notice to the company, and yet recover, the same as though they had faithfully performed their contract. What nonsense, then, the provision that the company may terminate either or any policy by returning a portion of the premium; for by having no notice of this increase of hazard, they would not be called upon to cancel the policy and return the premium; if they had the notice and neglected to do so it might be considered a waiver. And worse than useless is the provision, that if the insured shall make any misrepresentation, or concealment, or omit to make known any fact or feature in the risk which increases the hazard; or if after insurance is effected, such building or premises shall be occupied in any way so as to render the risk more hazardous than at the time of insuring; or if the risk be increased by any means whatever, &c., it shall be void, &c. 3. Again; if by the terms of this contract these provisions are not applicable to execu-

tors and administrators, by the same reasoning it would not be applicable to "assigns," for they are included in the same clause, "his executors, administrators and assigns." It will hardly be claimed that an assignee of Shephard would be allowed to recover against this company, upon this policy, after violating its provisions as has been done in this case. This is a conditional contract that the title may be changed and policy continued if notice is given and consent obtained, which is a condition precedent. Upon a promise by one to pay when he can without distressing his family, you must show it would not distress them. (7 *John.* 37.) On a promise to pay when in funds, you must show the promissor has funds. (2 *Denio,* 377.) On a promise to pay what is needed, you must show need. (2 *Seld.* 168.) Upon a promise to pay if necessary, you must show necessity. (10 *John.* 359.) 3. But this policy is void on account of the concealment of the fact that a tavern was then kept in the house, and misrepresentation of Shephard at the time the insurance was effected, and would be void, even in his hands, and if so, is certainly void in the plaintiff's hands. It provides : "If any person insuring shall make any misrepresentation or concealment, or omit to make known any fact or feature in the risk which increases the hazard of the same, &c., the policy shall be void." This house was insured as a dwelling, and is so described in the policy. The referee finds in the sixth finding, that this house had, in fact, been occupied for many years before the fire, and up to the time of the fire, as a tavern or saloon. That Shephard had paid a higher rate of insurance on account of keeping a tavern or saloon, but at this time represented that he had discontinued keeping a tavern or saloon, and was now only occupying it as a dwelling, and on this account the rate was reduced, and a new policy issued insuring it as a dwelling-house. That saloons are generally deemed more hazardous than dwellings, and more premi-

ums charged. The referee also finds that the defendant never knew of its being used as a tavern or saloon after this policy was issued, and the rate was thus reduced. The plaintiff testified that there had been a saloon kept in the basement of this house for thirty years prior to its destruction.

IV. The house being described in the policy as a dwelling-house, it is a warranty that it was used as a dwelling only. A dwelling-house is defined as the building and such attachments as are usually occupied and used by the family for the ordinary purposes of a house. (*Chase* v. *Hamilton Ins. Co.* 20 *N. Y.* 53.) Being a warranty, it is a condition precedent to the right to recover. In all contracts of marine insurance, the law implies an undertaking on the part of the assured that the vessel is of the character described in the policy; and all contracts of insurance are now construed alike, whether marine or fire. (*Howard* v. *Orient Mut. Ins. Co.*, 2 *Robt.* 539.) By the policy, it is expressly declared that the description of the property shall be considered a warranty by the assured. (*LeRoy* v. *Market Fire Ins. Co.*, 39 *N. Y.* 90.) It provides that all renewals shall be considered as continued under the original representation, in so far as it may not be varied by a new representation. The description and assertion of Shephard that no saloon was kept, was material to the risk, and if not a warranty, avoided the policy. In *Stetson* v. *Mass. Mutual Fire Ins. Co.*, (4 *Mass.* 337,) the court says: " The estimate of the risk undertaken by the insurer must generally depend upon the description of it made by the insured. A mistake or omission in his representation of the risk, either willful or accidental, avoids the policy." A warranty, being in the nature of a condition precedent, must be fulfilled by the insured before performance can be enforced against the insurer. (1 *Marsh. on Ins.* 335, 339.) In *Burritt* v. *Saratoga Mut. Ins. Co.*, (5 *Hill,* 188,) the court says: " The omission to disclose a

Lappin *v.* Charter Oak Fire and Marine Insurance Company.

fact material to the risk and not known to the under-writer, will avoid the policy, although the omission arose from mere accident, forgetfulness, or inadvertence; and this whether inquiry was made of the insured or not." "The parties have agreed, in and by the policy, that the misrepresentation or concealment shall avoid the policy, and we have nothing to do with the inquiry whether the fact misrepresented or concealed was material to the risk or not." The parties have agreed on the materiality of the thing warranted in this policy, and this agreement precludes all inquiry on the subject. (*Fowler* v. *Ætna Ins. Co.*, 6 *Cowen*, 673.) In 7 *Wend.* 270, the court says: "Here the parties have, by their contract, placed a misrepresent-ation or concealment in relation to particular facts upon the same footing as a warranty." Therefore the last clause of the sixth finding of fact and third conclusion of law by the referee, in this case, is erroneous; that the misrep-resentation and concealment in this case does not affect the policy, because the fire was in no way influenced by such fact. It is not a question of fact to be considered by the referee—the parties have settled that by their agree-ment. (*Jennings* v. *Chenango Mut. Ins. Co.*, 2 *Denio*, 75. *Chase* v. *Hamilton Ins. Co.*, 20 *N. Y.* 53.) In *Boynton* v. *Clinton Ins. Co.*, (16 *Barb.* 254,) the court says: "When goods are insured and described as 'in the store part' of the building, and at the time of the loss the goods are in a different room of the building, occupied for a different purpose, the store part being then occupied by other per-sons, no recovery can be had." And a tavern or saloon having been then contained in the house at the time the policy was issued, it rendered the policy void. It existed at the commencement of the risk, and remained the same until the fire. The case of *Wall* v. *East River Mu. Ins. Co.*, (3 *Seld.* 370,) was to recover for goods insured, in a building described in the policy as being occupied as a

storehouse, and the policy provided if it should be used and occupied for other purposes it should avoid the policy. It was used for making rope. Held that the description in the policy was a warranty, and the different use and occupation rendered the policy void. The court says: "Any statement or description in a policy of insurance which relates to the risk is a warranty, and a breach of a warranty avoids a fire, as well as a marine policy." The rule is the same in the case of insurance against fire as in that of a marine insurance. (*O'Neil* v. *The Buffalo Ins. Co.*, 3 *N. Y.* 122.) This tavern and saloon keeping cannot be considered as a temporary thing, and therefore not within the warranty, as in the case of 1 *Selden*, 469; for here the referee finds that it was continued for thirty years prior to and up to the fire. If this is a warranty, it becomes a condition precedent, and its materiality to the risk is of no importance. In *Chase* v. *Hamilton Ins. Co.*, (20 *N. Y.* 53,) the court says: "This was an insurance upon a stone dwelling-house; in fact the attached kitchen was wood, and the plaintiff claimed if he could not recover for the kitchen, yet he was entitled to recover for the upright or main building, which was stone." But the court held that it was a warranty and avoided the policy.

V. The house and barn being rented to and occupied by others, is a breach of the warranty contained in the policy, and avoids the policy. The policy provides that in case of "possession by another, of the subject insured, without the consent of this company indorsed hereon, this insurance shall immediately cease." Also, "if after insurance is effected, &c., such building or premises shall be occupied in any way so as to render the risk more hazardous than at the time of insuring, or if the risk be increased by any means whatever," the insurance shall be void. This is a warranty, and the warranty has been broken, and the policy is void. (*Authorities above cited. Bigler* v. *N. Y. Central Ins. Co.*, 22 *N. Y.* 402.)

VI. The plaintiff is not a trustee of an express trust, within the meaning of section 113 of the Code; and is not authorized by that section, or any other statute, to prosecute this action. By reading the last clause of that section it will appear that it does not cover this case. " A trustee of an express trust shall be construed to include a person with whom or in whose name a contract is made for the benefit of another." Now is the plaintiff the person with whom this contract was made; or was he the person in whose name this contract was made for the benefit of another? This contract was certainly not made with the plaintiff, nor was it made in his name, for the plaintiff, as administrator, was not in existence at the time this contract was made. The party who shall seek to assume the relation of trustee of an express trust, must at least have an existence at the time of the execution of the contract. The expression, " his executors, administrators," does not help out the case, nor show that the contract was in his name. Shephard did not know who would be appointed administrator of his estate after his death. How could the contract have been made in his name? How could he be the promisee in this contract? If, on notice of his appointment, they had assented, and adopted him as by the provisions of the policy, it would be different. There is no statute making the plaintiff a trustee of an express trust in this case. The case of *Considerant* v. *Brisbane* (22 *N. Y.* 399) is entirely different; and comes within the definition of section 113 of the Code. That action was brought upon a contract executed by the defendant to Considerant, " promising to pay Considerant, as executive agent of the company, $5000," and the contract was made with Considerant in person, who was acting as agent for a foreign company. The court say: " Trustee of an express trust is intended to embrace not only formal trusts declared by deed *inter partes*, but all cases in which a person acting in behalf of a third party,

enters into a written express contract with another, either in his own individual name, without description, or in his own name expressly in trust for," &c. Who were the parties to this contract? The insurance company of the one part, and Isaac Shephard of the other. A trustee of an express trust is a person who is interposed as the agent of the contracting party, between the promisors and the party equitably entitled to the fund or thing promised. In the case of *Considerant* v. *Brisbane,* above, the general term assumed the ground that where the promisee, though named in the contract, was mentioned only in respect of his official or representative character, and not as promisee individually, the promise would not be deemed made to him, and hence, such a case would not be embraced within section 113. But the Court of Appeals held that if the promise be to a person described as agent, and it appears upon the face of the writing, expressly or by implication, that it was made for the benefit of another, it is within the statute. They not only deem it necessary that there should be some person in existence to make the promise to, but that the promise should be made to him as a medium through whom it was to reach the principal. The principal in this case was Isaac Shephard. In *Wood* v. *Brown,* (34 *N. Y.* 342,) the court say: "A mere executor is not properly to be considered as a trustee, within the meaning of the statute." (*See also Lawrence* v. *Fox,* 20 *N. Y.* 269.) Shephard is the only person with whom, or in whose name, the contract was made. Administrator is no name, or name of an individual. Again; this policy provides that upon payment by the company of the loss, the person so receiving the pay shall assign to the company all claim he may have, and right to recover, against any person or persons causing such fire. Of what avail to the defendant in this case would it be to take an assignment from the plaintiff, for, having no interest in the real estate he could give none, and could give no right of action?

Lappin *v.* Charter Oak Fire and Marine Insurance Company.

And why is he entitled to recover in this case? The heirs should prosecute, and they would be able to carry out the contract with the defendant in this respect. We have not demanded an assignment of the plaintiff, for it would be useless.

VII. The promise to pay to Peter Lappin, as administrator, if made, was void. 1st. There was no consideration for the promise, and it was void for that reason. As to consideration, if Lappin had stepped in and adopted this contract during its existence, the consideration paid by Shephard might have enured to his benefit and upheld the contract. But the difficulty is, he was not in existence, and could not; he attempted to seize the defunct contract as soon as he received his official garment, but it was too late. It was dead, and could not be resuscitated by introducing a new man into it as promisee. 2d. There was no privity or mutuality between the plaintiff and defendant. Suppose, on the last day of the existence of this policy, the defendants had desired to pay it, could they safely have paid it to the plaintiff? Most certainly not. In *Lawrence* v. *Fox,* (20 *N. Y.* 268,) the principle of recovery upon a promise made to a third person is fully discussed.

VII. The plaintiff in this case, if entitled to recover anything, was only entitled to recover the value of the personal property, $48. Even personal property does not go to the administrator, unless it appears necessary to pay debts; and this is a condition precedent to be shown before a recovery can be had. (*Bradner* v. *Falkner,* 34 *N. Y.* 347.)

*B. B. & G. N. Burt,* for the respondent.

I. By the very terms of the policy, the defendant agreed that in the event of the death of the assured, owning the property, and a fire occurring during the life of the policy, it would pay the amount of such loss to his executors, ad-

ministrators or assigns, as the case might be, and in this case agreed to pay it to the administrator. The policy does not avoid the contract upon the transfer of the title of the property by descent to the heir, and the dvolution of the right of action to the administrator, but expressly preserves the right of action, and continues and extends the privileges of the agreement to the administrator of the assured. Thus the contract of insurance, by the death of Shephard, became by its terms a contract with his administrator for the protection of the interest of his heirs. So that the right of action became vested in one person, while the interest in the property insured, which was requisite to sustain the action, belonged to another. The administrator was a trustee of an express trust. The right to sue in his own name is preserved under the Code, (§ 113.) Every principle in this case, (so far as the right of the plaintiff to maintain the action is concerned,) is fully settled in the case of *Wyman* v. *Wyman*, (26 *N. Y.* 253.)

II. There was no warranty in the policy, and the defendant could not vary it in any way by parol proof. (*Alston* v. *The Mechanics' Mu. Ins. Co. of Troy*, 4 *Hill*, 329.) The proof shows that for thirty years prior to the destruction of the dwelling, the basement had been used for a saloon. It also appeared that this company (the defendant) had insured it as a saloon for four of five years prior to the issuing of the policy in question; and from the fact that he was not restricted at all in its use, nor who should occupy it, by the terms of this policy, the defendant cannot complain. So far as the barn was concerned, there was nothing in the policy that prevented the assured himself, or others to whom he might rent it, from occupying it as barns are generally used. This case illustrates how small a hole an insurance company will attempt to crawl through, after receiving premiums for years, and a loss occurs, without any fault on the part of the assured, or those holding under him.

*By the Court,* JOHNSON, J. The action is properly brought in the name of the plaintiff as administrator, if a right of·action accrued to any one, by reason of the destruction of the property, upon the contract of insurance. The agreement on the part of the defendant was, in terms, "to make good unto the said assured, his executors, administrators and assigns, all such immediate loss or damage not exceeding in amount the sum insured, as shall happen by fire to the property as above specified, from the 7th day of December, 1867, at noon, to the 7th day of December, 1868, at noon." The plaintiff is the administrator of the assured, and the contract is with him, the assured being deceased; and he prosecutes for the benefit of the person or persons entitled to the moneys recovered on account of such loss, provided the contract remains in force, notwithstanding the change of title to the property insured. (*Wyman* v. *Wyman,* 26 *N. Y.* 253.)

The policy in question was regularly renewed for one year, from and after the 7th of December, 1868. On the 21st of July, 1869, the assured died intestate, and the property insured descended to his heirs at law. On the 9th of November, 1869, the fire occurred which destroyed entirely the property so insured. The plaintiff was appointed administrator on the 10th of January thereafter, 1870. It thus appears that the property insured had changed hands nearly four months before the loss; but the fire was within the time to which the policy of insurance had been extended. The loss was wholly the loss of the heirs who inherited the property, and in no respect the loss of the estate represented by the plaintiff. They had owned it several months before the fire, and the loss thereby occasioned; and the question arises whether the contract can be enforced in their favor, or whether it remained in force at all, after the death of the assured and the transfer of the title to his heirs. The contract provides that the policy shall not be assignable, before or after loss,

without the consent of the company manifested in writing thereon; and further, that "in case of assignment without such consent, whether of the whole policy, or of any interest in it, the liability of the company shall then cease." It is also provided that "in case of any sale, transfer, or change of title, in the property insured by this company, or of any interest therein, such insurance shall be void and cease." There is also a further provision as follows: "And in case of the entry for foreclosure of a mortgage, or the levy of an execution or attachment, or possession by another of the subject insured, without the consent of this company indorsed hereon, this insurance shall immediately cease." No consent had been indorsed upon the policy by the company, at the time of the fire, and there had been, long before, not only possession by others than the assured, of the subject insured, but a complete change of title also.

It seems clear, therefore, that the policy of insurance, by the most clear and explicit terms and provisions thereof, became void, and ceased to have any binding force, upon the death of the assured, and the vesting of the title to the property insured in his heirs at law. That this was a change of title, from the assured to others, cannot be denied, and it brings the case within the express terms of the policy. The possession of the property insured, by others than the assured, without the consent of the company indorsed upon the policy, also produces the same result. It puts an end to the contract, and renders it no longer obligatory.

It is claimed on behalf of the plaintiff that the policy being, in terms, payable to the administrator of the assured, it cannot be held to mean, or to extend to, a change of title by the decease of the assured, and the descent of the insured property to his heirs, or to possession by his heirs in such an event, but must be held to mean change of title, or of possession, by some act of the assured, or by some oper-

ation of law other than that which would flow from the death of the assured intestate. The case of *Wyman* v. *Wyman,* (*supra,*) is relied upon as authority to sustain this proposition. But the two cases, it will be seen, are quite different. In that case the provision was, "the interest of the insured in this policy is not assignable unless by consent of this corporation manifest in writing; and in case of any transfer or termination of the interest of the insured, either by sale or otherwise, without such consent, this policy shall be void and of no effect." Emott, J., who delivered the opinion in that case, says, in reference to this provision: "The clause is to the effect that the interest of the assured in this policy is not assignable; and it is a transfer or termination of the interest of the assured in the policy, and not in the premises insured, which, when made without consent, is to avoid the policy under this condition." And it was held that inasmuch as the policy was a mere personal contract with the assured, and had not been assigned in fact, it had not become void under that provision, but was valid in the hands of the administrator, and might be enforced if it covered the loss. The same construction was given to a provision in policies of insurance almost precisely similar in terms, in *Smith* v. *The Saratoga Mu. Fire Insurance Co.,* (1 *Hill,* 497,) and in *Phelps* v. *The Gebhard Fire Insurance Co.,* (9 *Bosw.* 404.) But here the very condition exists which was absent in those policies, to wit, the termination of the interest of the assured, "in the premises insured." The language is general, and is not limited to a change of title or termination of interest in any particular way, or from any one cause more than another. It is, "in case of any sale, transfer or change of title in the property insured, or of any interest therein, such insurance shall cease and be void." No matter how the transfer or change is brought about, if it is made at all, in any way, the insurance ceases and becomes void. This provision in the contract, it is to be observed, is not conditioned, or

made dependent upon, the consent of the insurers in any form, but is absolute and unconditional. In this respect it differs entirely from the terms of the policy in the case of *Burbank* v. *Rockingham Marine Fire Insurance Co.*, (24 *N. H.* 550.) In that case the contract was "to insure Samuel Burbank and his heirs, executors, and administrators and assigns the aforesaid property against loss or damage by fire, subject to the provisions and conditions of the charter and by-laws of said corporation." One of the provisions of the charter was, "that when any house or other building shall be alienated by sale or otherwise, the policy shall thereupon be void, and be surrendered to the directors of said company to be canceled." The decision there turned upon the meaning of the word "alienated;" and it was held that where property descended to the heir of a deceased person intestate, it was not alienated, within the common law definition and meaning of that term, and therefore the change of title, in that case, did not fall within the terms and meaning of that provision of the charter. Here the provision of the policy is not restricted to an alienation of the property insured, but extends to every conceivable transfer, or change of title, or interest.

In *Phelps* v. *The Gebhard Fire Ins. Co.* (*supra*,) there was no provision in the policy on the subject of a transfer of the property insured, but only of the contract, as in the case of *Wyman* v. *Wyman;* and besides, the company had renewed the policy to the executors of the assured, to whom the property had been devised. And in *Smith* v. *Saratoga Mu. Fire Ins. Co.* (*supra*,) the provision related to a transfer of the interest of the assured in the contract, only. Neither of those cases has any bearing upon the provision of the contract in the case at bar, in respect to "any sale, transfer or change of title in the property insured, or of any interest therein."

There is, as has been seen, in the policy here, the same provision in regard to the assignment of the policy, or of

Lappin *v.* Charter Oak Fire and Marine Insurance Company.

any interest in it, without the consent of the company in writing, as in the cases before cited. And there is also the provision that a change of possession of the property insured, without the consent of the insurers indorsed on the policy, shall render it void. But the change of title is not subject to any such condition; and the question is whether the change of title does not of necessity, by the very terms, and plain meaning of the parties, render the contract void and of no effect. It seems to me it must do so. There is certainly no equity in favor of the heirs, which can operate to keep the contract alive, or continue it in force against the defendants, contrary to the express terms of the instrument. The heirs have paid the defendants nothing, and they have certainly no greater equities against the defendants than a judgment creditor or mortgagee would have had, who might have acquired his title by virtue of judgment or of mortgage foreclosure. There is no conceivable reason for straining the provisions of the contract, if we were at liberty to do so, in favor of the heirs at law of the insured. The loss would have been payable to the plaintiff as administrator, had it occurred in the life of the intestate, and not been paid to him, whether it was so expressed in the policy or not; and it must be presumed, when it is so expressed, that it was intended to provide for payment to the administrator in a proper case. It cannot be presumed that it was intended to provide for payment to the administrator, in a case where, by the express terms of the policy, it was to " be void and cease." Full effect may be given to that part of the promise, by applying it to the case of a loss happening under conditions which did not affect the validity of the policy. It was, I think, assumed, if not distinctly held, in *Wyman* v. *Wyman,* (*supra,*) that an action might have been maintained by the administrator, in such a case as that, against the company, though the question was not before the court for consideration. But that was upon

the distinct ground that the policy was still in force, and had not as a contract been subjected to any condition provided for which should render it void. The question before the court in that case, and the only one, was whether the administrator or the heirs at law, or the judgment creditors of the deceased, were entitled to the fund. The company had paid the loss over for the benefit of any party who might be adjudged entitled to it.

I am inclined to the opinion that the policy was also void and of no force or effect, by reason of the property having been described, and insured, as a dwelling-house, when in fact it was used in part as a saloon, which, as the referee finds, increased the risk. The description is made part of the contract, and a warranty by the assured, and it is expressly provided, among other things, that in case of any misrepresentation or concealment, or omission to make known any fact which increased the hazard, the insurance should be void. But as the case seems entirely clear upon the other point, it is unnecessary to decide this.

The judgment must therefore be reversed, and a new trial ordered, with costs to abide the event.

[FOURTH DEPARTMENT, GENERAL TERM, at Syracuse, November 14, 1870. *Mullin*, P. J., and *Johnson* and *Talcott*, Justices.]