## APPEAL OF J. H. NICHOLS.

### [ESTATE OF J. F. BARTLETT, DECEASED.]

#### FROM THE DECREE OF THE ORPHANS' COURT OF WARREN COUNTY.

Argued May 8, 1889—Decided October 7, 1889.

1. The estate of a decedent in Pennsylvania is cast upon the heirs at law directly the ancestor dies, subject, however, to the jurisdiction of the Orphans' Court to administer the same, both real and personal, first of all for the benefit of creditors and next for legatees, devisees and heirs.

2. Where a decedent in his lifetime held a policy of fire insurance upon real estate which was destroyed by fire, after his death but while the policy was in force, the insurance payable thereon is an asset of the estate with which the administrator is chargeable, and the right of the heirs thereto is subordinate to that of the creditors.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and
MITCHELL, JJ.

No 19 July Term 1889, Sup. Ct., court below, No. 7 March
Term 1888, O. C.

On March 5, 1888, the first and final account of J. A. Day,
administrator of the estate of J. F. Bartlett, deceased, was duly
filed and confirmed nisi.   Exceptions being filed thereto by B.
J. Jackson, a judgment creditor, and J. H. Nichols, a contract
creditor, on the ground that the administrator should have
charged himself with the sum of $1,200, received by him from
the Hamburg-Bremen Fire Insurance Company, the account
and the exceptions were referred to *Mr. Charles A. Peterson*,
as auditor to hear and. determine, to restate the account and
make distribution.

From the testimony adduced the auditor found the facts to
be as follows :

That the decedent, J. F. Bartlett, died in 1886, leaving to
survive him no widow, but four children ; that at the time of
his death he was seised of a house and lot under articles of
agreement, on which house he held an insurance policy in the
Hamburg-Bremen Insurance Company ; that some three or four
months after his death the house was totally destroyed by fire ;
that about one year after the date of the fire, John A. Day,
administrator of the deceased, having procured a power of at-
torney from the heirs, and, upon giving a receipt signed by
himself, as administrator and as attorney for said heirs, received
from aforesaid insurance company the amount of the insurance
covered by aforesaid policy, less the interest ; that said John
A. Day, administrator, holds the said amount, less the cost of
collection, being $1,100, as trustee for the parties whom the
court may adjudge entitled to it ; that sometime in the fall of
1886, Chaffee, the vendor in the articles of agreement, took
possession of the property, under a forfeiture clause in said
agreement.

On the foregoing facts the auditor found the following con-
clusions of law :

1. That immediately upon the death of J. F. Bartlett, his
title to said house and lot descended and became fully and
completely vested in his heirs, subject to the statutory liens of
creditors of the deceased.

Auditor's Report.

2. The insurance must run with the title to the land, in the name of the owner of the land, although a party having a pecuniary interest in the preservation of the property may make a special contract of insurance to cover his interest: Grevemeyer v. Insurance Co., 62 Pa. 340; Ferree v. Insurance etc. Co., 67 Pa. 373; Farmers M. Ins. Co. v. Graybill, 74 Pa. 17; Insurance Co. v. Stewart, 19 Pa. 45.

3. Upon the death of J. F. Bartlett, his interest in the insurance policy passed to and vested in his heirs, who, so far as the right to the indemnity against loss was concerned, stood in the same relation to the insurance company, and to the creditors of the deceased, as did the deceased in his lifetime. See Wyman v. Wyman, 26 N. Y. 253, where it is decided as follows: " Upon the death of one who has effected an insurance against fire, of his house, the interest in the policy devolves upon his heirs at law, and, in case of loss the damages accrue to them." This case is a parallel case to the one before us and seems to harmonize with the law of our state, except as to the final disposition of the funds, in that after stating as above quoted, the court directed that, subject to the dower interest of the widow, the creditors should be satisfied out of the fund, and the remainder, if any, should go to the heirs, which seems to us contrary to the general rule. See Flanders on Fire Insurance, § 5, where it is held: " Where the contract of insurance is made with the assured, 'his executors, administrators and assigns,' the right of action upon the policy at death of the assured vests in his personal representative, but the insurance being on a building, which is real estate, the interest in the property insured belongs to the heirs at law. The executor or administrator is a trustee for the heirs, who alone are damnified by the loss of the building, and who alone are entitled to the indemnity."

4. Insurance is a contract of indemnity to the party having the policy, or the owner of the property: Grandin v. Insurance Co., 107 Pa. 27.

5. A judgment creditor is not entitled to the proceeds of insurance in case of the loss of the building against which the judgment is a lien: Grevemeyer v. Insurance Co., 62 Pa. 340.

6. That the $1,100, the proceeds of insurance policy in the hands of John A. Day, administrator, etc., should be paid to the heirs of J. F. Bartlett, deceased.

Opinion of Court below.

The auditor, therefore, found there was no reason for a re-statement of the account, and further found that the balance due the estate, as shown thereby was $332.06; that the in-debtedness of the estate amounted to $1,541.01, and reported distribution of said balance to creditors at the rate of about 19 per cent upon their several claims.

The said J. H. Nichols excepted to the auditor's report on the ground that the auditor erred in not charging the adminis-trator with said sum of $1,200, or so much thereof as was ne-cessary to pay the decedent's debts.

On April 1, 1889, the exceptions having been argued, they were dismissed by the court, BROWN, P. J., filing an opinion, which after stating the facts, proceeded:

Should the fund go to the benefit of Bartlett's creditors, or to his heirs? We have not been referred to and have not suc-ceeded in finding any decision of our Supreme Court in which the same question has arisen, and must dispose of the case as the rights of the parties appear to us.

We attach no importance to the fact that the policy was made payable to the assured, "his executors or administra-tors;" for, while it may be that his heirs, for want of privity, could not, and the administrator could maintain suit against the insurance company, the money, when collected, would be held by the administrator for whoever should be legally en-titled to it. The contract of insurance was to indemnify the owner of the property. The heirs of Bartlett were the owners at the time of the fire, and neither the creditors of their an-cestor nor his administrator, representing the creditors, had any insurable interest or any right in or to it. At most they had only a charge or lien on it.

Had the loss occurred while Bartlett was alive, a judgment creditor whose only security was the insured property, could not have claimed the insurance money by virtue of the lien of his judgment. When Bartlett died, his heirs became the owner of the insured property, and were entitled to the posses-sion and enjoyment of it, subject to the statutory lien of the debts of their ancestor, enforceable only by the methods pre-scribed by law. Had the insurance money been paid to the

heirs, the creditors of Bartlett could not have claimed it by virtue of their statutory lien. At Bartlett's death, he had no present interest in the contract to indemnify him for injury by fire to his real estate that could pass to his personal representative. His right to the insurance money, in case of loss, was based upon his ownership of the property at the time of loss, and by his death the ownership, by operation of law, vested in his heirs. We are of the opinion that the claim of the creditors to the insurance money, as part of the ordinary personal assets of the deceased, cannot be supported, and thus far the conclusion is in accordance with the case of Wyman v. Wyman, 26 N. Y. 253.

But upon the authority of the case of Wyman v. Wyman, the counsel for the creditors ask us to charge the administrator with the amount of the insurance money, by reason of what is claimed to be the superior equities of the creditors; and, if the reasoning of the Court of Appeals is correct and the law of Pennsylvania is the same as that of New York, the case would seem to sustain the contention. The New York court treated the insurance money as the proceeds of real estate sold and brought into court for distribution among the creditors having liens against the realty. We are of the opinion that it cannot be so regarded, under the law of this state, but that the contract of insurance must be treated as a personal contract to make good the loss to him who was the owner at the time of its occurrence, and not as a guaranty to whoever might sustain loss by the destruction of the insured property.

The New York court says that "a court having control of such funds should not allow them to pass into the hands of irresponsible and infant heirs, leaving the creditors to pursue them by the dilatory remedy of a new and distinct proceeding." If the money was in the hands of the heirs and could be collected from them for the benefit of the creditors under our law, then we could, to avoid circuity of action, award it to the creditors. But we do not understand such to be the law in Pennsylvania. Had the building been injured by a third person after the death of Bartlett, the administrator would have no cause of action; compensation would belong to the heirs, although the injury depreciated or made worthless the claims of the creditors; and we conclude that such

must be the case when the destruction is from an accident for which the insurance company agreed to indemnify the owner.

It is a mistake to say that the $1,100 in controversy is in court. It is not so, unless the administrator as such is entitled to it. The fact that the person holding the money is both administrator and trustee for the heirs, is of no consequence. If the heirs are by law entitled to it, as we think they are, the Orphans' Court cannot control it. In the hands of their trustee it is, so far as the question before us is concerned, in the hands of the heirs themselves. We see very clearly that the loss of the building was a misfortune to the creditors and a benefit to the heirs, but if our opinion of the law is correct we are without power to make good the misfortune. Although unfortunate, the creditors are no more so than they would be had the building been burned without any insurance, or destroyed by a tornado. The case seems to us to be the accidental depreciation in value of real estate against which the creditors had liens, but in or to which they had no right.

The exceptions are all dismissed. The report of the auditor is confirmed and distribution decreed according to it.

Thereupon the exceptant took this appeal, specifying that the court erred in dismissing the exceptions to the auditor's report and confirming the same.

*Mr. Samuel T. Neill* (with him *Mr. H. J. Muse*), for the appellant.

*Mr. D. I. Ball* (with him *Mr. C. C. Thompson*), for the appellees.

OPINION, MR. JUSTICE STERRETT:

In March, 1886, J. F. Bartlett died intestate, seised of an equitable interest in a house and lot, held under articles of agreement, and leaving issue four daughters, two of whom were minors. The house, which was insured by him, for three years from March, 1885, in the Hamburg-Bremen Insurance Company, for $1,200, payable "unto the said assured, his executors or administrators," was totally destroyed by fire about four months after his decease. A question having arisen, whether

the insurance money should be paid to the administrator, or to the children and heirs-at-law of the assured, it was agreed, in writing, by the two adult daughters and the guardian of the minors that it should be paid to the administrator, John A. Day, and if it should thereafter be decided by the court that the money belonged to the children he would pay the same to them, otherwise he would account for it as administrator. The loss was promptly adjusted by the insurance company, and paid to the administrator. In due time he filed his account, but instead of charging himself with the net amount, $1,100, received from the company, he referred to it as having been paid to him in pursuance of the above-stated agreement, and declared his readiness to pay the same to the children of his intestate, or otherwise account therefor as the court might direct. For the purpose of presenting the matter to the Orphans' Court, the omission to charge himself as administrator with the insurance money was excepted to, and an auditor was appointed to pass upon the question, re-state the account, if necessary, and distribute the balance that might be found in the hands of accountant. The auditor found as a fact, that even including the insurance money as an asset for distribution among the creditors, the estate was largely insolvent; but, notwithstanding this, he held that the children of the intestate were entitled to the insurance money. The court was of the same opinion, and accordingly the decree from which this appeal is taken, was entered.

The question thus presented is, whether, the estate being clearly insolvent, the creditors have any claim upon the insurance money? We think they have. The contract under which the money became due and payable to the personal representative of the intestate, is one of indemnity against a possible loss which actually happened after his decease but during the life of the policy. If his estate, exclusive of the property insured, had been solvent, his children who succeeded to his interest in said property, would undoubtedly have been entitled to the insurance money; but, inasmuch as his estate, including the realty and the sum realized from the insurance policy, is admittedly insolvent, their right is subordinate to that of the creditors. In this state the lands of a decedent, as well as his goods and chattels, are assets for the payment of his debts. When the personal property is exhausted or clearly insufficient, it is the

duty of the personal representative, under the direction of the proper court, to resort to the realty, and thus, if possible, satisfy the claims of creditors. In Horner v. Hasbrouck, 41 Pa. 169, 179, it is said, it will be seen, from a brief glance at the history of our Orphans' Court, how we enforce the principle, never lost sight of in our jurisprudence, that the lands of a decedent, like his goods, are assets for the payment of his debts, and that the right of succession has respect only to so much of his estate as remains after his debts have been paid. When a man dies in Pennsylvania, his real and personal estate comes within the jurisdiction of the Orphans' Court, to be administered, first of all, for the benefit of creditors, and next for legatees, devisees, and heirs. We usually define the heir to be one on whom the law casts the estate at the death of the ancestor, but with us the estate is cast subject to the jurisdiction of the Orphans' Court. Heirs are thus postponed to creditors. If it be said, as for some purposes it is correct to say, that the estate vests in the heirs directly the ancestor dies, it must be understood to be a contingent interest, defeasible in behalf of creditors. What really vests in the heir, is the title to the residuum, or, in the language of the act of 1834, the "surplusage" of the estate. This is what the law casts on the heir. It can be nothing else, consistently with our system of administration and distribution.

While, strictly speaking, the insurance money in question is not the proceeds of real estate bound by the lien of decedent's debts, it really represents, to that extent, the realty that was insured and destroyed by fire. If the insurance company had elected to restore the lost building, instead of paying the amount of risk in cash, the property would have been immediately subject to sale for the payment of debts. Whether we regard the insurance money as the proceeds of the contract of indemnity and a personal asset in the hands of the administrator, or as representing the building that was destroyed, in either case the claim of the heirs thereto is subordinate to that of the creditors.

While we cannot assent to some of the conclusions reached by the learned court in Wyman v. Wyman, 26 N. Y. 253, the general principle, in relation to the right of heirs as against creditors of an insolvent estate, so ably maintained in that case, harmonizes with the views above expressed.

It follows from what has been said that the court below erred in not holding that the insurance money was distributable among the creditors of the intestate.

> Decree reversed and record remitted, with instructions to distribute the fund in accordance with the foregoing opinion. Costs of this appeal and expenses of distribution to be paid out of the fund.