## SUPREME COURT.

EDWARD SAVAGE, agt. THE HOWARD INSURANCE COMPANY.

EDWARD SAVAGE agt. THE LONG ISLAND INSURANCE COMPANY.

The defendants issued a *policy of insurance* to Marilla Kirk, executrix and trustee of Andrew Kirk, deceased, insuring "the heirs and representatives of Andrew Kirk, deceased," against loss or damage by fire for one year, to the extent of $1,000, on a grist mill belonging to said estate. Subsequently Mrs. K., the trustee during the term of insurance and previous to the fire, sold said mill to one Arnold (who was in possession under a lease) for $8,000, and took back a mortgage to secure $7,000 of the purchase money. There was no assignment of the policy by Mrs. K. nor any notice of the sale given to the company. The plaintiff was substituted as trustee in place of Mrs. K. before the commencement of this action. The policy contained the following clause, to wit:

" If the property be sold or transferred, or any change takes place in the title or possession, whether by legal process, or judicial decree, or voluntary transfer, or conveyance," then the policy shall be void.

*Held* that this clause did not operate as a forfeiture or render the policy invalid. It was the *trust fund* that was intended to be secured by the insurance, and there has been no transfer of that property or interest. *Affirming S, C. at Special Term, 43 How.)*

*Third Department. General Term, October* 1872.

*Before* POTTER, PARKER *and* DANIELS, *J.J.*

THESE two cases are appeals from a judgment upon a trial at circuit, before a judge, without a jury. The findings of fact are without exception, and the two cases are without material difference.

The material portions of such findings are as follows:

1. That Andrew Kirk, late of the city of Albany, now deceased, in and by his last will and testament, appointed

Marilla Kirk as sole executrix thereof, and that said will had been duly proved as a will, having reference to both real and personal estate, and that said Marilla Kirk duly qualified and entered upon her duties as such executrix of said last will and testament.

2d. That the said Andrew Kirk, in and by his last will and testament, gave the said Marilla Kirk all his real estate in trust, among other things to hold, sell and dispose of the same, and to take back mortgages upon such sales, and to collect all the rents issues and income thereof, and to let and lease all or any portion of said real estate, and with power to insure any of the said property from loss or damage by fire; at her discretion pay the premiums of insurance and collect the amount of loss when sustained, and after deducting from rents and income of said estate her expenses and annuity provided in said will, then she is directed to divide the remainder of the nett income of said estate among the heirs of the said Andrew Kirk, deceased.

3d. That the said Andrew Kirk, at the time of his death, was the owner of the said estate embracing the two-story frame grist mill and machinery hereafter mentioned; and the same, by said will, passed to said Marilla Kirk, in trust, as aforesaid.

4th. That the defendant is a corporation duly created by and under the laws of this state. That on or about the 19th day of September, 1868, in consideration of the payment by the said Marilla Kirk, as executrix as aforesaid to the defendant, of the premium of twenty dollars duly paid, the defendant, by their agents, properly authorized thereto, made, executed and delivered to the said Marilla Kirk a policy of insurance No. 2652, duly signed by the treasurer and secretary of said insurance company, wherein the said insurance company certified and agreed to insure the heirs and representatives of Andrew Kirk, deceased, against loss or damage by fire to the amount of $1,000 on their two-story frame

grist mill, machinery and fixtures attached owned by them, and propelled by water, situate on the Norman kill, in the town of Bethlehem, Albany county; and the said defendant also therein agreed to make good unto the said assured, their executors, administrators and assigns, all such immediate loss or damage not exceeding in amount the sum or sums insured as above specified, as shall happen by fire to the property so specified, from September 19th, 1869, to September 19th, 1870, at 12 o'clock at noon.

5th. That the said policy of insurance did contain the following conditions, among other things, to wit : " If the property be sold or transferred, or any change take place in the title or possession, whether by legal process or judicial decree, or voluntary transfer, or conveyance, etc., then, and in every such case, this policy shall be void; and also when property has been sold and delivered or otherwise disposed of, so that all interest or liability on the part af the assured herein named has ceased, this insurance on such property shall immediately terminate."

6th. That Henry O. Arnold went into possession and occupation of said mill in March, 1869, as a tenant of said Marilla Kirk, executrix, and was in possession and occupation of said mill at the time said policy of insurance was given, and has since continued to occupy said mill.

7th. That prior to the burning of said grist mill, and on or about the month of February, 1870, the said insured grist mill was conveyed by said Marilla Kirk, as such executrix, by deed to said Henry O. Arnold for $8,000; that said Arnold paid cash $1,000, and gave back to said Marilla Kirk, as such executrix, a purchase money mortgage for $7,000, as and for the balance of the consideration money; that the policy of insurance was not assigned , and that the defendant had no notice of said sale, and that no consent to the same was indorsed on said policy; that said mortgage has not been paid or any part thereof.

8th. That on the 31st day of July, 1870, said grist mill was entirely destroyed by fire, together with a large portion of the machinery and fixtures, which was a loss to the said heirs and representatives of Andrew Kirk, deceased, to the amount of over $4,000.

9th. That due notice of said fire and proof of losses were given to the said insurance company in the manner required by them, and according to the conditions of said policy, on the first day of September, 1870.

10th. That, on the 29th day of June, 1871, the said Marilla Kirk was, upon her own petition, removed from the said office in due form by an order of the Surrogate of the County of Albany, in which the said last will and testament of Andrew Kirk, deceased, was admitted to probate, and was recorded, and the plaintiff was at the same time duly appointed by order of said surrogate administrator, with the will annexed of said Andrew Kirk, deceased, and duly qualified as such.

11th. That, on the 20th day of August, 1871, the said Marilla Kirk presented to the Supreme Court her resignation of the trusts hereinbefore set forth, and the said court, upon said resignation, and upon the petition of Mary K. Harrison, one of the heirs and *cestui que trust*, interested in the execution of said trusts, by an order duly made at a special term held at the City of Albany, on the said 29th day of August, 1871, accepted said resignation, and removed said Marilla Kirk from her said office, and appointed the plaintiff in her place testamentary trustee, under said last will and testament, with power to execute said trusts.

### FINDINGS OF LAW.

1st. That the words " heirs and representatives" sufficiently described Mrs. Marilla Kirk, the executrix and trustee, who had, under the will of or descent from Andrew Kirk, deceased, the title to the property.

2d. That the conditions contained in the policy should be construed as referring to the transfer or conveyance of the entire insurable interest.

3d. That the conveyance by Mrs. Marilla Kirk, as executrix, to Henry O. Arnold, and the reconveyance by Henry O. Arnold to said Marilla Kirk, as executrix, by way of mortgage, for seven-eighths of the title, does not constitute such change or transfer of title or interest as to make void the policy.

6th. That the plaintiff is entitled to recover from the defendants the amount of insurance claimed, being one thousand dollars, with interest thereon from November 1, 1870, making at this date one thousand and ninety-four dollars and sixty-seven cents.

The appeal to this court is upon the law of the case as found by the judge.

JOHN GOULD, *for plaintiff*

I. Policies of insurance should be construed liberally, for the interest alike of both parties, "Justice should never be strangled in the nets of form." *White agt. the H. R. Ins. Co.*, 15 *How.*, 288..

II. The plaintiff having contracted with the defendants for insurance, and not having assigned the policy, although having sold the premises without notice to or consent of the defendants, retains an insurable interest in the property, to the extent of seven-eighths of the entire value of the property destroyed, as mortgagee, and is entitled to receive the insurance. (*Shotwell* agt. *The Jeff. Ins. Co.*, 5 *Bosw.*, 247; *The Ætna Fire Ins. Co.*, agt. *Tyler*, 16 *Wend.*, 385; *Howard* agt. *The Albany Ins. Co.*, 3 *Denio*, 301.)

III. A mere change of ownership of the subject insured will not avoid the policy, provided there be an insurable interest at the time of the loss. (*Fernandez et al.*, agt. *The Great Western Ins. Co.*, 3 *Robt.*, 457; *Phelps, Executrix*,

etc., agt. *The Gebhard Fire Ins. Co.*, 9 *Bosw.*, 404 ; *Hitch-cock* agt. *The North Western Ins. Co.*, 26 *N. Y.*, 68.)

IV. As the special ˙clause relied upon by the defend-ants (last part of Condition 1 and Condition 4), operates by way of forfeiture, it is to be construed strictly, and the trans-. fer and termination of interest in the property in order to make void the policy, must be a transfer or termination of the whole insurable interest of the insured in such property. Any change of the title which does not deprive the assured of insurable interest, does not work that result. (*Lazarus* agt. *the Commonwealth. Ins. Co.*, 5 *Pick.*, 76 ; *Strong* agt. *The Manufacturers' Ins. Co.*, 10 *Pick.*, ˙40. ; *Amasa Stetson* agt. *The Mass. Mut. Fire Ins. Co.*, 4 *Mass.*, 330 ; *Jackson ex dem. Stevens et al.*, agt. *Silvernail*, 15 *Johns.*, 278.

V. Within the good sense and spirit of the terms of the body of the policy and of the " fourth condition," the words, " any sale, alteration or transfer" should be construed as ap-plying to acts which " terminate" the interest of the as-sured (*Van Deusen* agt. *Charter Oak Ins. Co.*, 1 *Abb.*, *N. S.*, 349, 358, *S. C.*, 1 *Robt.*, 55.

This sale did not terminate the interest of the insured.

˙The plaintiff has seven-eighths of the entire interest.

The˙ theory of a purchase money mortgage is that the title passes from vendor into vendee and back to vendor so rapidly that even a wife's dower does not attach.    In this case the title passed out of and back to the plaintiff so rapidly that it was one transaction, and therefore could not render void the policy.    ˙

VII. Only à small part of the conditions pleaded by way ˙of defense, applies to this case.    All but a short clause refers to representations and other formalities to be observed at the time of effecting the insurance, and are only applicable to the acts or statements or condition of property at the time of making policy.

˙ VIII. Henry O. Arnold, the owner of the grist-mill (the property insured and which was burned), in his own right

and as purchaser of the property cannot claim the least interest in the policy, as the policy was not assigned.

Therefore the defendants will escape any payment of loss unless held liable to the plaintiff.

IX. Change of possession provided against in Condition No. 1.

Yet insurance companies pay losses to owners, although such owners lease their property and a change of possession takes place continually without any consent of the company.

In this case there was no change of occupation or possession even after sale.

X. The mortgagee in equity without fraud on his part should be protected, although he may not have conformed to an arbitrary rule of the insurance company when the company can show no fraud on the part of the insured, and no damage on account of any breach of any condition.

XI. Marilla Kirk, as executrix and testamentary trustee, was both real and personal representatives of Andrew Kirk, deceased. (2, *Burrill's Law Dict.*, 407 ; 2, *Stephens' Com.*, 243.

XII. The title to the grist mill passed to Marilla Kirk, in trust, by virtue of the will. She, as executrix and trustee, had an insurable interest therein, and paid the premium and received the policy, and is properly described by the terms " heirs and representatives." *Clinton* agt. *Hope Ins. Co.*, 51 *Barb.*, 647, 652 ; *Herkimer* agt. *Rice*, 27 *N. Y.*, 163.

XIII. Unless Marilla Kirk is the proper party to recover the insurance, the policy is of no avail to any one, for there was no privity of contract with any one else.

M. HALE, *for defendant.*

I. The policy contained a provision that " if the property be sold or transferred, or any change take place in title or possession, whether by legal process, or judicial decree, or voluntary transfer, or conveyance, without the consent of the company indorsed thereon, the policy shall be void."

It was proved and admitted, and found by the court, that in February, 1870, Mrs. Kirk conveyed the insured property to Henry O. Arnold for $8,000 (taking back a mortgage for $7,000 of the purchase money) ; that the defendant had no notice of the sale, and that no consent to the same was indorsed on the policy.

The provision of the policy above quoted was a part of the contract between the parties, and must be construed so as to give effect to the intent of the parties, and the language employed must be taken in its ordinary popular sense. (*Springfield F. & M. Co.*, agt. *Allen*, 43 *N. Y.*, 389, 394.)

Upon any possible rule of construction, it could not be doubted for a moment, if the question were an original one, that the conveyance of the entire fee was a change in title, or that the purchase by Arnold for $8,000, and the deed by Mrs. Kirk constituted a sale, and no one could be found who would say that the taking back of a mortgage for the purchase money prevented a "chauge," and left the title the same as before the conveyance, or that the property was any the less "sold" because a mortgage was given for part of the price. At the date of the policy and renewal, Mrs. Kirk held title in fee in trust for the benefit of the heirs of Andrew Kirk, deceased. At the time of the fire, Arnold was the owner in fee, subject to a mortgage for $7,000 held by Mrs. Kirk. Mrs. Kirk, in her proof of loss, swears that the property was "sold" and conveyed by her to Arnold.

And in order to sustain this recovery the court must hold that these facts show no "change in title," and also that though Arnold "purchased" the property it was not "sold."

The learned judge, before whom the case was tried, however supposed that the case of *Hitchcock* agt. *N. W. Ins. Co.*, (26 *N. Y.*, 68) had established a doctrine upon which the plaintiff here could recover.

In this it is respectfully submitted the learned judge was manifestly in error.

The clause relied on by the defendant in that case was that

in case of the transfer or termination of the interest of the assured, either by sale or otherwise, without the consent of the company, the policy should be void ; and the court held that a change of the title, which did not deprive the assured of insurable interest, did not work a forfeiture.

But here the agreement is, that if the property be sold or transferred, or if any change take place in title or possession without consent of the company, the policy shall be void. It is conceded in the case of *Hitchcock* agt. *N. W. Ins. Co.*, (26 *N. Y.*, 74), that language might be used which would accomplish the result claimed by the defendant. Can any longuage be suggested more apt for that purpose than that employed in this case, by which any sale of the property or any change in title without the company's consent, is made a forfeiture ?

And it is virtually conceded by Judge SELDEN in that case, in the language quoted by the court below in this case, that there was there a " change of title," though not a termination of interest.

Indeed, upon the construction given to the policy by the court below, neither the words " change of title," nor the words " if the property be sold," have any force.

The supreme court of Massachusetts, under a policy with the condition that all alienations and alterations in the ownership of the property insured without consent should make void the policy, held that the making of a mortgage by the asssured, though not an " alienation," was an " alteration," and not having been consented to by the company, rendered the policy void. (*Edmunds* agt. *Mutual Safety F. Ins. Co.*, 1 *Allen*, 311 ; and see *Springfield F. & M. Ins. Co.*, agt. *Allen*, 43 *N. Y.*, 397.)

II. The policy also contained a clause, that " if the interest of the assured in the property be any other than the entire, unconditional and sole ownership of the property, for the use and benefit of the assured, * * * it must be so represented to the company and so expressed in the written part of this policy, otherwise the policy shall be void."

The policy was issued to the "heirs and representatives of Andrew Kirk, deceased."

Mrs. Kirk, the original plaintiff, was not an heir of Andrew Kirk. As his executrix, she had not the "entire, unconditional and sole ownership" of the property.

In fact the title neither of Mrs. Kirk, nor of the heirs or devisees of the deceased, was an unconditional and sole title. Mrs. Kirk's title was in trust for the benefit of the heirs. The heirs had no legal title. It was a case where, by the terms of the policy, the nature of their title should have been expressed in the written part of the policy.

III. The plaintiff was not the real party in interest. If the contract of insurance was valid it was with the heirs and representatives of Andrew Kirk, deceased, the owners of the property, and they alone could maintain the action.

IV. For the reasons above stated, the judgment should be reversed.

*By the Court,* POTTER, *J.*—It shall be sufficient, in the review of this case, to examine only the two questions presented as objections to the recovery :

1st. That the plaintiff had no interest or title to the property insured, and was not, therefore, a party in interest entled to recover. And 2d. that the persons named as "heirs and representatives" had no title to the property or interest in the property. The whole policy is not set forth in the case, but it sufficiently appears from the findings of fact, which are uncontroverted, that one Marilla Kirk held the insured property as a testamentary trustee and executrix for the "heirs and representatives" of one Andrew Kirk, deceased, and that the policy of insurance was issued by the defendants to the said Marilla Kirk for the benefit of such "heirs and representatives." ○ That by the terms of the will the said Marilla held the said real estate in trust with power of alienation, and to hold the proceeds in trust, with the rents

issues and income, and with directions to divide the estate among the heirs of the testator.

As such trustee, she had an insurable interest in the said property, and the issuing of the said policies to her by such ·designation; the property would, if it remained real estate, be properly represented by her as trustee, and if sold under the conferred power in the will, would still be represented by her until divided, as the proper legal owner and representative of said heirs or *cestue que trust*. The form of the policies is presumptive evidence that the insurers had knowledge of the character and title of the property they insured, and that they insured it accordingly.

The substitution of a new trustee by a judicial exercise of power did not increase the hazard or change the title to the property, and did not affect the representative character of the insured or the interest therein. This objection, therefore, has no merit.

2d. The judge found as a fact that during the term of insurance and previous to the fire, that Marilla Kirk, the trustee, sold certain real estate which included the grist mill (the property insured) for the sum of $8,000 to one Henry O. Arnold without any change of possession, and took back a mortgage for $7,000 to herself as executrix for so much of the purchase money at the time; that the policy of insurance was not assigned; that the defendant had no notice of the sale, and that no consent to the same was indorsed upon the policy, and that the insured property was worth about $4,000.

There is a provision in the policy in the following words : "If the property be sold or transferred, or if any change takes place in title or possession, whether by legal process or judicial decree, or voluntary transfer, or conveyance, * * * this policy shall be void." Upon this condition the defense rests, claiming a breach. The specific objection or exception to the finding of the court in this particular is, that it did not find; that the deed and transfer of the title to the

property to Henry O. Arnold, without the consent of the company, was a sale and transfer of the property, and a change in the title thereof by voluntary conveyance, and that it rendered the policy void. The point of the appellant in this regard is confined to his exception as made. This court will not feel called upon to discuss the point upon any broader ground than that presented by the case to the court below and by the argument presented here.

The meaning and intent of insurance contracts, like all others, is to be obtained first from the language employed, and if by settled rules of construction the intent is not clear from the language itself, then the surrounding circumstances existing at the time the contract was entered into may be resorted to to solve the difficulty and to dispel any obscurity. (*Dwarris*, 177, 178, *Amer. ed.*) The trustee of the beneficiaries of the insured property was authorized (by the testator) to insure it for the beneficiaries. The form of the insurance implies, on the part of the defendant, knowledge of this power and of the parties in interest. This interest of the beneficiaries was in the trust fund whether it remained in the real estate or became personal by alienation. This fund, or the lien which secured it, was the property insured. So long as this fund remained in the hands of the trustee, whether in real or personal estate, the trustee, as such, had an insurable interest therein. Insuring property to one for "heirs and representatives" by necessary implication carries the knowledge that the beneficial interest was in other than her whose name was used as the representative. The language, in its ordinary and popular sense, expresses that idea, and this made it a correct description of the insurable interest that was insured.

As mortgagee of the same estate the trustee had the same insurable interest in the fund, as personal, as when it consisted of real estate. (*Gordon* agt. *Mass. & F. V. Ins. Co.*, 2 *Pick.*, 249.) With this presumption of knowledge by the defendants of the real ownership of interest in the fund, the

fund was the property insured; and this becomes the apt and appropriate description of the property, and is clear evidence of what is the meaning and intent of the parties, and truly indicates what property or interest was intended to be insured. (*Springfield F. and M. Ins. Co.* agt. *Allen*, 43 *N. Y.*, 395.) And it was not necessrry, under the circumstances stated, that the interest insured should be more spefically stated. (*Id.* 396.) The policies were made and accepted with reference to this knowledge. So, too, it is held in a case where the description of the property insured was general, if a sale is made, and the vendor agrees to stand as trustee for the vendee, his insurable interest remains. (*Per Lord* ARBINGER in *Powels* agt. *Innis* 11, *Mees. and W.*, 13.) And so where the sale is either conditional, or the vendor retains an insurable interest as mortgagee or guarantor, (1 *Phil. on Ins.*, § 90,) and where the insurance is for the benefit of another who has an insurable interest in it, and the insurance in terms imports that it is for the benefit of such other. (*Id.*, § 91.) This insurable interest has never ceased. This interest was never transferred. It was in a fund constituted of real estate; it remained an interest in the same estate.

The case of *Hitchcock* agt. *N. W. Ins. Co.*, 26 *N. Y.*, 68, settles the rule that in cases where there is no special clause in the policy to the contrary, that no transfer of interest will work a forfeiture which does not entirely deprive the assignor of a policy or an insurable interest therein. In that policy was the following clause: "The interest of the assured in this policy or in the property insured is not assignable unless by the consent of this corporation manifested in writing, and in case of transfer or termination of any such interest of the assured, either by sale or otherwise, without such consent, this policy shall from thenceforth be void and of no effect. The vessel insured was sold upon a contract retaining a lien for $4,000, and the policy retained as security for such lien; but no consent of the insurance company was obtained. How does that condition differ from the one

in the case at bar ?   " If the property be sold or transferred, or any change takes place in the title or possession, whether by legal process or judicial decree or voluntary transfer or conveyance,   *   *   *   the policy shall be void." In a very recent case of *Kitts agt. The Massasoit Ins. Co.*, decided at general term in the fifth judicial district, (56 *Barb.*, 177,) it was held " That the sale of property and taking back a mortgage to secure the purchase money, does not change the title within the meaning of a policy of insurance, that in case of any change of title in the property insured the policy shall cease and determine." See also *Van Deusen* agt. *Charter Oak and Marine Ins. Co.* (1 *Robt.*, 55.)

These cases are easily distinguished from *Lappin and Charter Oak, &c., Ins. Co.* (58 *Barb.*, 325.) There the whole title was changed, and nothing was left to bring the case free from the express conditions.

Unless, then, the clause in the policies before us operates as a forfeiture, the case comes within *Hitchcock* agt. *The N. W. Ins. Co.* and *Kitts* agt. *The Massasoit Ins. Co.* *supra*.

This is the real question in the case. I think the only question. If, as we have already cited cases to show it was the trust fund that was intended to be secured by insurance, there has been no transfer of that property or interest, and the judgment is right. See authorities in cases last cited, which go still further. But it is claimed that the language of the condition in the case at bar is much stronger and more full than in *Hitchcock* agt. *The N. W. Ins. Co.*, in having in it the words, " or any change takes place in title or possession," but in this it hardly differs from the case of *Kitts* agt. *Massasoit Ins. Co.*,. And see *Ayers* agt. *Hartford Ins. Co.*, (17 *Iowa*, 477,) and same title, (21 *Id.*, 185,) same title (*Id.*, 193,) which, in effect, hold the same rule. Forfeitures are never favored in law or equity, and a contract under which a forfeiture is claimed is to be most strictly construed. This is one rule. There is no reason why it is not applicable to

this case.    *Vattel*, in his 19 rules or·maxims of construction, lays down this for the construction of agreements:    " It (the construction) ought to be made in such a manner that all the parts appear consonant to each other, that which follows with that which went before, unless it manifestly appears that by the last clauses something is changed that went · before.":

*Rutherford* lays down the rule as follows: " When we explain a doubtful part of an agreement by the help of some other part of it, the clause which we make use of for this purpose is a *circumstance* which is connected with the clause to be explained,    *    *    as they both came from the same hand, and are both formed together in the same writing.    If these are sound rules, as I think they are (2 *Kent, Com.*, 555), we find another clause in the same policy which must be read in connection with the clause upon which the defendant relies for his defense, which, read in the light of the above rules of construction, so qualifies and explains the condition set up as a defense, as to bring it into harmony with the rules above laid down and in cases cited from the courts. This other clause follows the condition claimed, and is in the· following words: " When property has been sold and delivered, or otherwise disposed of, so that all interest or liability on the part of the assured herein named has ceased this· insurance on such property, shall immediately terminate." Reading this last clause in connection with the clause set up as far as a defense: " It so qualifies and explains the former as to take away not only the force claimed for it by the defendant, but also to make it consistent with the law as laid down in the decisions we have above cited.    It certainly be- · comes a necessary inquiry by the court to say, for what purpose these latter words are made a part of the agreement?    By every rule of construction they are to be given some meaning.    They cannot, upon examination, be found to add anything to the former clause.    Every possible change and disposition of the property is in that provided for,

and transfer is intended by the previous clauses. But if used by way of explanation they are reasonable, consissistent, harmonious and full of meaning. They clearly explain, what kind of change which makes the policy void, viz.: one that divests the insured of all insurable interest in the property insured. The whole conditions of the policy are to be viewed and compared in all their parts, so that every part of them may be consistent and effectual. (2 *Kent Com.*, 555.) The best interpretation is always made by the antecedents and the consequents. (2 *Inst.*, 317.) *Ex antecidentibus el consequentibus fit optima interpretatio..* (*Brown's Maxims,* 249.)

Thus construing this contract would be giving to every part of it a meaning, and that meaning consistent with every other part of the contract, and consistent also with established law. If I am right in these views of construction the contract of insurance is made a plain, simple and intelligible contract, easily understood, all its parts made to give it effect, and is taken without admitting of arbitrary, forced and technical resorts to aid in its destruction. The interpretation I have given it is a construction most conformable to the principles of natural justice; it is obtained without even resorting to the principle that one's own covenant shall be taken most strongly against himself. It can stand without that upon a basis of good sense, having good faith to support it, as well as the moral aid of holding that agreement should be enforced, undertakings executed and promises performed.

I think the judgment should be affirmed.

DANIELS and PARKER, J.J., concured.