their verdict, and they found as damages only the balance unpaid upon the mortgage, instead of the value of the property converted. The record contains no certificate that the case contains all of the evidence. It, however, clearly appears that the question of damages was submitted to the jury upon an erroneous theory of the law governing that question, and that plaintiffs were prejudiced thereby. A new trial should be ordered.

Order reversed, and new trial ordered, with costs to abide the event. All concur.

(9 App. Div. 339.)

## MATTHEWS v. AMERICAN CENT. INS. CO.

(Supreme Court, Appellate Division, Fourth Department.     October 16, 1896.)

1. INSURANCE—CONDITIONS OF POLICY—DEATH OF INSURED.
    Noncompliance with the requirements of a policy that immediate notice of loss shall be given to the insurer, and an inventory furnished within 60 days after the fire, and that no action shall be brought on the policy unless commenced within 12 months next after the fire, is not excused by the fact that the fire occurred after the death of insured, and that, by reason of a contest of her will, letters were not issued to the executor until two years afterwards. Adams and Ward, JJ., dissenting.

2. LIMITATION OF ACTIONS—RUNNING OF STATUTE.
    A claim against an insurance company for a loss occurring after the death of the insured, not being a cause of action which accrued to him, is not affected by Code Civ. Proc. § 402, extending the time within which an action may be brought after the death of the person in whose favor the claim exists.

Action by William Matthews, as executor of the last will and testament of Caroline Silvernail, deceased, against the American Central Insurance Company on a fire insurance policy. A verdict was directed in favor of plaintiff, and defendant moves for a new trial on exceptions ordered to be heard in the appellate division in the first instance. Granted.

August 1, 1889, the defendant, by a New York standard policy, insured Caroline Silvernail, for three years, against damage by fire, to an amount not exceeding $1,050, on the following property: $400 on her frame dwelling house; $450 on her frame barn and sheds attached; $200 on her produce in the barn and sheds. December 2, 1891, the insured died, leaving a last will and testament by which she devised her farm on which the insured buildings were situated to her executor for five years; then to be sold, and the avails, after the payment of debts, divided among her three children. April 20, 1892, the barn, sheds, and their contents were destroyed by fire. It is conceded that the property destroyed was of the value of $612. Shortly after the death of the testatrix the executor named in the will delivered it to the surrogate of the county, and declined to take any steps in respect to probating it; but afterwards, and before the fire, he filed a petition asking that the will be admitted to probate. Some of the heirs contested the will. A litigation ensued, and May 15, 1894, the will was admitted to probate, and letters issued to William Matthews, the executor nominated therein. July 11, 1894, the plaintiff verified the proofs of loss, which were mailed to and received by the defendant, July 23, 1894, at its principal office, at St. Louis, Mo. October 29, 1894, this action was begun.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

I. N. Ames, for defendant.

J. F. Parkhurst, for plaintiff.

FOLLETT, J.	This action is defended on three grounds:	(1) That it was not begun within 12 months next after the fire; (2) that written notice of the loss was not immediately given; (3) that a verified statement of the loss was not furnished within 60 days after the fire.	The following are the provisions of the policy under which these defenses arise:

"If fire occur the insured shall give immediate notice of any loss thereby, in writing, to this company; protect the property from further damage; forthwith separate the damaged and undamaged personal property; put it in the best possible order; make a complete inventory of the same, stating the quantity and cost of each article, and the amount claimed thereon; and within sixty days after the fire, unless such time is extended in writing by this company, shall render a statement to this company, signed and sworn to by said insured. * * * No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements, nor unless commenced within twelve months next after the fire."

It is settled in this state that parties to contracts may prescribe the time within which either party must, if ever, bring actions to enforce the contracts, and that such stipulations are not against public policy and are valid.	This rule has often been applied in favor of insurers and against the insured.	Wilkinson v. Insurance Co., 72 N. Y. 499.	And it has also been applied against the insurer and in favor of the insured.	Wright v. Association, 43 Hun, 61, affirmed 118 N. Y. 237, 23 N. E. 186.	The plaintiff seeks to evade the effect of this stipulation by availing himself of the exceptions contained in chapter 4 of the Code of Civil Procedure ("Limitations"), but when the parties limit the time, by contract, within which an action must be brought thereon, their rights are to be determined by the contract, and the statute of limitations has no application.	The statute so provides:

"Sec. 414. The provisions of this chapter apply, and constitute the only rules of limitation applicable, to a civil action or special proceeding, except in one of the following cases:	(1) A case, where a different limitation is specially prescribed by law, or a shorter limitation is prescribed by the written contract of the parties."

In Wilkinson v. Insurance Co., supra, the plaintiff sought to escape the effect of the stipulation by reason of a provision in the Revised Statutes saving the rights of parties from the effects of those statutes when they were stayed by an injunction from bringing an action. The court said:

"This provision does not aid the plaintiff.	The exception has no application where a limitation is prescribed by the contract of parties, but only applies to cases governed by the limitation in the general law."

In Riddlesbarger v. Insurance Co., 7 Wall. 386, the plaintiff attempted to escape the effect of such a stipulation by invoking an exception contained in the statute of limitations of the state of Missouri, where the contract was made and sought to be enforced.	The court held that the statute had no application to the case, saying:

"In the second place, the rights of the parties flow from the contract. That relieves them from the general limitations of the statute, and as a consequence from its exceptions also."

The section of the Code above quoted, and the two cases cited, one in the court of appeals in this state, and the other in the supreme court of the United States, would seem to be sufficient authority on this proposition.

Again, the fire occurred April 20, 1892,—4 months and 18 days after the death of the insured (plaintiff's testatrix), and no cause of action accrued to her; and this case does not fall within any of the exceptions of chapter 4 of the Code of Civil Procedure ("Limitations"), extending the time in which actions may be brought by the representatives of decedents on causes of action accruing before death. The delay in bringing this action was not induced by any act on the part of the defendant, but was due solely to the neglect of those who should have procured the appointment of a representative for the insured. No reason is given why a temporary administrator was not applied for and appointed pending the contest over the will. Had this been done, proof of loss might have been given, and an action brought within the period prescribed by the policy.

The defendant's exceptions should be sustained, and, as a new trial would be unavailing, the complaint should be dismissed, with costs.

HARDIN, P. J., concurs.

GREEN, J. (concurring). The insured died December 2, 1891. The fire occurred April 20, 1892. The will was contested and was admitted to probate in May, 1894, and letters testamentary were thereupon issued to the plaintiff. Proofs of loss were sent to the company before the expiration of 60 days from issuing of letters, but were not returned, and no attention was paid to the matter. (Not stated that even any notice of loss was ever sent.) Action was brought October 29, 1894. The policy provides that no action shall be sustainable "until full compliance by the insured with all the foregoing requirements, nor unless commenced within twelve months next after the fire." The "foregoing requirements" are the usual conditions in fire insurance policies, providing for giving notice of the fire, making inventory, and within 60 days after the fire furnishing proofs of loss, etc. And then "the loss shall not become payable until 60 days after the notice, ascertainment, estimate, and satisfactory proof of the loss herein required have been received by this company," etc. This action was commenced within 60 days after furnishing proofs of loss. More than two years had elapsed since the fire before proofs of loss were furnished. Plaintiff's excuse is that letters testamentary were not issued, and could not have been issued, to him, as the executor designated in the will, until the contest was determined and the will admitted to probate; and his demand is that the court shall ingraft in the policy a provision that in case of the death of the insured proofs of loss may be furnished within 60 days after the issuing of letters testamentary. The contract speaks for itself, and it is not within the power of the court to change, enlarge, modify, or

qualify its terms, or to import into it provisions, conditions, or exceptions which the parties have not seen fit to make.    The death of the insured was an event certain to happen, although uncertain as to the time of its occurrence, and yet the parties have omitted to provide for it.    The court is asked to supply the omission so as to extend the time for furnishing proofs of loss from 60 days to 2 years.    This provision the insured failed to exact from the company, and the company has not consented to make this stipulation.    Upon what principle, therefore, may the court proceed in disregarding the express terms of the contract, waive the requirement that the proofs of loss shall be furnished within 60 days after the fire, and hold that the company must accept the proofs if furnished within 60 days after issuing of the letters, though 2 years may have elapsed since the fire occurred?    Counsel has failed to point out any principle of law or doctrine of equity sanctioning such a power, or any authority. Nor was there any legal excuse for omitting to furnish the proofs, for, although an executor may not maintain an action before letters issued, yet he derives his title from the will, and not from the letters, and he is empowered to do everything and anything for the preservation and protection of the estate before letters are issued.    Code, § 2659; Redf. Sur. (5th Ed.) 108–110, 432, 453–455.    He possessed the power, and, if he intended to accept the trust and qualify, it was his duty, to have proceeded to furnish the proofs of loss, so as to preserve and protect the estate and the interests of creditors, legatees, and all others whom he represented.    Consequently there was no legal excuse for the omission to comply with this condition.    So he might have obtained letters of temporary administration.    Code, § 2670.    It is suggested that the surrogate might refuse to exercise his discretion to appoint a temporary administrator.    The answer is that it is a fair presumption that the surrogate would not fail to do any act that is shown to be necessary for the protection of the estate.

Again, it would seem that the devisee of the land, being the real party in interest,—and if there is no deficiency of personal assets for satisfaction of creditors, the sole party in interest,—would have the right to furnish proofs of loss, and the company would be bound to accept them.    If the personal assets are ample for payment of debts, the heir or devisee is entitled to the proceeds of the insurance policy. If insufficient, then he would be entitled to the surplus, if any, remaining after payment of the debts.    It was held in Wyman v. Wyman, 26 N. Y. 253, modifying 36 Barb. 368, that the insurance moneys belong to the heir or devisee, subject to the claims of creditors upon a deficiency of assets, and also to dower; that it is real assets, and not personal; that the executor, etc., may sue upon the policy, by virtue of its terms, where it is payable to executor, administrator, and assigns; he may sue as the "trustee of an express trust," although he may not be entitled to hold the money as against the heir or devisee; if it is required to pay creditors, and there is a surplus, the heir is entitled to it.    Not decided whether heir or devisee, as the real party, and perhaps the only party, in interest, could sue upon the policy.    It seems not.    Approved in Herkimer v. Rice, 27

N. Y. 163, 180; approved also in Culbertson v. Cox, 29 Minn. 309, 13 N. W. 177. It seems that payment to the heir would not protect the company against the claim of creditors. Lappin v. Insurance Co., 58 Barb. 325. Lawrence v. Insurance Co., 2 App. Div. 267, 37 N. Y. Supp. 811, simply held that action may be brought by personal representatives. It was decided in Nichols v. Day (Pa. Sup.) 18 Atl. 333, that where the estate is insolvent the proceeds of the policy are applicable to the payment of debts, and do not go to the heirs. If the personal assets are sufficient for the payment of the debts, and the heir or devisee is entitled to the proceeds of the policy, the executor would receive the moneys as trustee for the heir or devisee alone. If the personal estate is insufficient for the payment of the debts, the executor would be trustee of the surplus. In either case the heir or devisee would have a beneficial interest, and it was his duty, if he desired to protect his interests, to furnish the proofs of loss himself, or to take steps to obtain the appointment of a temporary administrator to perform that duty. It does not appear that the policy was unknown to the plaintiff or to the devisee at the time of the fire, or within the 60 days thereafter; and, since the insured had been dead four months prior to the fire, it may be assumed that the fact was discovered. Here, then, were laches both on the part of the plaintiff and the devisee, and no legal excuse appears. Under such circumstances the obligation or liability of the company cannot be enlarged or extended for the benefit of persons who have slept upon their rights. The executor appointed by the will, and the devisee, the owner of the building, cannot sit idly by for 2 years, and then be allowed by the law (although not by the contract) to furnish the proofs as a full compliance with the condition that they must be furnished within 60 days after the fire. There was negligence on the part of the owner of the building, who was the owner of the proceeds of the policy subject to the claims of creditors, and also laches on the part of the person authorized to receive the money for his use. The insurer cannot be charged with responsibility for their omissions. If the proofs had been furnished the company might have elected to rebuild. Sherwood v. Insurance Co., 10 Hun, 593; Id., 73 N. Y. 447; Wheeler v. Insurance Co., 16 Hun, 317. In the case of Gamble v. Assurance Co., Ir. R. 4 C. L. 204, 2 Biglow, Cas. 681, it was provided by the policy that notice of accident should be delivered at the office of the company, in London, within seven days after its occurrence; but owing to the sudden character of the accident, and its resulting in instantaneous death, there was nobody capable of giving the requisite notice. Held, that the provision is not discharged by reason of the fact that, owing to the act of God, the case was of so sudden and fatal a character that it was impossible to have given the requisite notice within seven days after the accident. This is an extreme case, it must be admitted. It was distinguished in Trippe v. Society, 3 Misc. Rep. 445, 23 N. Y. Supp. 173. Other cases cited post also support, in their reasoning and conclusions, the foregoing rule of law.

Contention is made by plaintiff's counsel that he is entitled to the benefit of any provisions or exceptions contained in the statute of

limitations, and that the running of the statute is suspended until letters testamentary are issued, and the executor is thereby empowered to bring suit. Let us assume for the purpose of argument that the proofs were furnished in time, and that the executor was in a position to maintain an action, and that he may invoke in his behalf the exceptions and provisions (except as to limit of time) contained in the statute. Now, we are unable to perceive any express provision of the Code that would relieve the plaintiff in such a case as this. Where the cause of action accrues during the lifetime of a party, and he dies before the expiration of the time limited for the commencement of the action, his personal representative may institute an action after the expiration of such time, and within one year after his death. Code Civ. Proc. § 402. Of course, this section has no application, and does not aid the plaintiff. The failure of an appointment of executors does not save the running of the statute. Dunham v. Sage, 7 Lans. 419. Section 396 provides for cases of disability. By section 392 it is provided that for the purpose of computing the time within which an action must be brought by an executor, etc., to recover personal property taken after the death of a testator, etc., and before the issuing of letters testamentary, etc., or for damages for converting or injuring such property within the same period, the letters are deemed to have been issued within six years after the death of the testator or intestate. In Throop's note it is stated that this section is new; that "as an action cannot be maintained until there is a person in being, capable of suing, it has been frequently held that in the cases contemplated in this section the statute of limitations commences to run only from the grant of letters"; citing Bucklin v. Ford, 5 Barb. 393, where an action brought 14 years after the transaction was sustained. "Other cases are known to have occurred where actions have been maintained upon the same principle, although commenced forty or fifty years after the transaction, and under circumstances of great hardship," etc. At first blush it would seem that as to all other cases, where the cause of action accrued after the death of the party, there would be no suspension of the statute until grant of letters testamentary or of administration. When the statute makes an exceptional provision for a special class of actions, it would seem to be a fair inference that all other actions were left to be governed by the general rules of limitation. However that may be, a different interpretation and effect have been given to this section, and it has been held, on the authority of decisions prior to the Code, that in respect to cases not within section 392 the statute is suspended until the appointment of an administrator, although 22 years had elapsed since the death of plaintiff's intestate. Cohen v. Hymes, 64 Hun, 54, 18 N. Y. Supp. 571. The doctrine is that the statute does not begin to run against an action which accrued in favor of the estate of a deceased person, after his death, until there is some person in existence capable of suing, or at least some person to whom the right of action may accrue; that "until a representative is appointed the cause of action does not accrue, or in fact exist." Bucklin v. Ford, 5 Barb. 393; Everitt v. Everitt, 41 Barb. 385, 393; Dunning v. Bank, 6 Lans.

297, 61 N. Y. 497, 503; Dunham v. Sage, 7 Lans. 419, 421; Sanford v. Sanford, 62 N. Y. 553, 555.    To apply this doctrine to a conventional limitation prescribed in a policy of insurance, the company might be called upon to pay many years after the fire occurred.    And to give the plaintiff here, or the devisee and owner of the property, the benefit of this rule of law, would contravene the express language of the contract, and annul the rule prescribed by the agreement of the parties.    Since the contract itself fails to provide for a particular contingency or event, the provisions of the statute cannot be ingrafted upon it as one of its terms.    It has been repeatedly adjudicated that, where a limitation of time is fixed by agreement of the parties, the terms in which the agreement is expressed cannot be enlarged or extended, qualified or controlled, by the provisions of the statute of limitations.    Wilkinson v. Insurance Co., 72 N. Y. 499, 503, 504; Quinn v. Insurance Co., 81 Hun, 207, 30 N. Y. Supp. 714; Riddlesbarger v. Insurance Co., 7 Wall. 386; Wheeler v. Insurance Co., 82 N. Y. 543; Brown v. Insurance Co., 7 R. I. 301; Wilson v. Insurance Co., 27 Vt. 99; McElroy v. Insurance Co., 48 Kan. 200, 29 Pac. 478 (the court quoted Wilkinson v. Insurance Co., 72 N. Y. 499; Arthur v. Insurance Co., 78 N. Y. 462; Wilson v. Insurance Co., 27 Vt. 99; Brown v. Insurance Co., 7 R. I. 301); Arthur v. Insurance Co., 78 N. Y. 462; Harrison v. Insurance Co., 67 Fed. 298 (the court followed Riddlesbarger v. Insurance Co., 7 Wall. 386; O'Laughlin v. Insurance Co., 11 Fed. 280,—that "the contract clause is to be substituted, not only for the general statute of limitations, but as well for the exceptions thereto"); Insurance Co. v. Stoffels, 48 Kan. 205, 29 Pac. 479; Hocking v. Insurance Co., 130 Pa. St. 170, 18 Atl. 614 (in this case the court went beyond the mere words of the policy, and quoted with approval Wilson v. Insurance Co., 27 Vt. 99; Riddlesbarger v. Insurance Co., 7 Wall. 386; Wilkinson v. Insurance Co., 72 N. Y. 499; Arthur v. Insurance Co., 78 N. Y. 462,— that the statutory provisions are not applicable to conventional limitations); Suggs v. Insurance Co., 71 Tex. 579, 9 S. W. 676.    The case of O'Laughlin v. Insurance Co., 11 Fed. 280, is similar to the last above case, and was followed in the decision of that case.    The authorities are all against the contention made by plaintiff's counsel, and further discussion is useless.

Defendant's exceptions sustained and complaint dismissed, with costs.

ADAMS, J. (dissenting).    The policy of insurance upon which this action is founded, and which is known as a "standard policy," contains, in addition to the usual requirement that proofs of loss shall be furnished within 60 days after the fire, the following provision:

"No suit or action on this policy for the recovery of any claim shall be maintainable in any court of law or equity until after the full compliance by the insured with all the foregoing requirements, nor unless commenced within twelve months after the fire."

It is not claimed that there has been a literal compliance with these requirements, and consequently, at first blush, it would seem

that the plaintiff must fail in his action; but this, as well as every other provision in a contract of insurance, is subject to a construction which shall be both just and reasonable, and which shall reflect common sense as well as good judgment. It is an indisputed fact in this case that the fire which destroyed the property insured did not occur until nearly five months after the death of the owner, Mrs. Silvernail. Prior to the fire the plaintiff, who was the executor named in Mrs. Silvernail's will, duly filed the usual petition, asking that such will might be admitted to probate and letters testamentary thereon issued to him. A contest on the part of some of the heirs at law resulted, and it was not until some two years thereafter that probate was granted and letters were issued; and within the 60 days ensuing the plaintiff, as such executor, verified and filed the proper proofs of loss, which were received and retained by the defendant without objection of any kind. Failing to obtain any adjustment of the loss sustained, the plaintiff brought this action, after waiting a reasonable length of time; and this, it seems to me, was, in the circumstances of the case, a sufficient compliance with the requirements of the condition over which this controversy arises. The law, in its interpretation of contracts, does not require impossibilities, and in this case I fail to see how the condition in question could have been complied with within the period of time fixed by the contract of the parties for either filing proofs of loss, or bringing an action upon the policy, because, owing to the death of the insured, there was no person in existence during the year following the fire who had any legal right to file such proofs or maintain the action. Ang. Ins. 403, § 389; Wyman v. Prosser, 36 Barb. 368. In view of the rule established by the authorities just cited, and which has been frequently recognized and approved by the courts, it will hardly be contended, I think, that any person other than the legal representatives of the insured would have had any standing in court to maintain an action for the loss sustained; and while it is possible that a temporary administrator might have been appointed, within the period specified in the contract, to bring such an action, the parties interested in the decedent's estate were not entitled to such an appointment as a matter of right, and there is excellent authority for saying that they were not bound to make the application as a condition of obtaining the amount covered by the policy. Hall v. Brennan, 64 Hun, 394, 19 N. Y. Supp. 623, affirmed 140 N. Y. 409, 35 N. E. 663. It is no answer to this proposition to say that it would enable the representatives of a deceased party to delay the bringing of an action upon a policy of insurance indefinitely; for, when the element of laches is injected into an action, it would, of course, come within the operation of a very different rule. No case has been called to our attention which decides the precise question here raised,—that is, one which arises upon the same state of facts,—but, as I read them, the books are full of cases where a party has been excused from a literal performance of the terms of his contract where he was prevented from performing the same by circumstances beyond his control. The case of Semmes v. Insurance Co., 13 Wall. 158, is perhaps as nearly analogous as any which may be

cited. This was an action upon a policy of insurance containing a provision similar to the one in suit, and the plaintiff was prevented by reason of the Civil War from bringing an action thereon within the time limited; and this was held to be a sufficient reason for non-compliance, the court (Mr. Justice Miller) saying:

"The defendant has made its own special and hard provision on that subject. * * * We have no doubt that the disability to sue imposed on the plaintiff by the war relieves him from the consequences of failing to bring suit within twelve months after the loss, because it rendered a compliance with that condition impossible. * * * That part of the contract therefore presents no bar to the plaintiff's right to recover."

The case of Longhurst v. Insurance Co., 19 Iowa, 367, was one where the policy in question was intended to protect a mechanic's lien, and it contained a provision which limited the time within which any action thereon must be brought. The action was not brought within such limitation, but the court held that this fact was no bar, because the limitation was inconsistent with the nature of the interest insured, and therefore ineffectual to prevent a recovery if diligence was employed to establish the loss in the way prescribed by law. In Bumstead v. Insurance Co., 12 N. Y. 81, the policy in suit contained a condition that the insured, in case of loss or damage, should, as a condition precedent to a recovery, within 30 days deliver to the insurer a particular account of the loss or damage, verified by his oath, and, if required, by his books and vouchers, together with an inventory of the property destroyed or damaged, giving the amount of damage to each item, verified by his oath. The insured was unable to comply with this requirement, by reason of the fact that the papers and other data from which a statement of the nature required could have been made were consumed in the fire. And the court held that the action might be maintained, and that such conditions were construed as requiring only as full and accurate an inventory and statement as the party, without fraud or fault on his part, was able to furnish. This case is also an authority for the proposition that where an insurance company receives proofs of loss which do not comply with the requirements of the policy, without objecting to their form or time of service, and declines to pay the loss, without placing the refusal upon such non-compliance, its action amounts to a waiver of any objection which may have existed by reason of such noncompliance. In O'Neill v. Association, 63 Hun, 292, 18 N. Y. Supp. 22, which was an action brought to recover upon a policy of life insurance which contained a condition requiring the plaintiff to furnish a certificate of the death of the insured, by his attending physician, and no such certificate was furnished, for the reason that the attending physician declined to make the certificate until his bill for services to the deceased was paid, it was held that this was a sufficient reason for not requiring a full compliance with the condition of the policy as a prerequisite to maintaining the action. But, without citing additional authorities in support of this particular aspect of the case, it is sufficient to say that, in the view which I take of this question, the fair and reasonable construction which ought to be given to the provisions of

the policy in suit which relate to the filing of proofs of loss, and the commencement of any action to recover such loss, is that the time limited for taking either of these steps did not begin to run until there was some person in existence who might furnish the proofs or bring the action. And this view, it seems to me, is, in principle, supported by the case of Trippe v. Society, 140 N. Y. 23, 35 N. E. 316. As opposed to this view of the question, the case of Wilkinson v. Insurance Co., 72 N. Y. 499, is cited. This was a case where it was claimed that the insured were prevented from bringing their action upon the policy, within the time limited therein, in consequence of an injunction issued at the suit of a third person against one of the parties to the contract, and it is stated in the syllabus of the case that this condition of affairs was not sufficient to relieve a party for noncompliance with the condition. But it will be observed, by a careful reading of Judge Andrews' opinion, that the decision of the case rests upon the fact that the injunction did not restrain the commencement of the action, but only enjoined the insured from receiving the insurance money from the company, and that it also appeared that, even if the bringing of the action had been enjoined, the court would, upon proper application, have modified the order so as to have enabled the insured to comply with the condition of his policy, and that he was consequently guilty of laches for omitting to make such application. I do not see, therefore, that the principle established in this case is in conflict with the views hereinbefore expressed. Nor is it impossible to distinguish the case at bar from that of Wheeler v. Insurance Co., 82 N. Y. 543. The policy in the latter case contained a clause by which the insured forfeited his interest therein, in the event of the nonpayment of any premium when due; and it was held that the insanity of the insured was no excuse for such nonpayment, and did not effect a waiver of the forfeiture, because it was not necessarily an obstacle to the performance of the condition. And the case is an express authority for the proposition that, where the condition in a contract of life insurance is incapable of performance, no forfeiture results.

The learned counsel for the defendant makes some point upon what he is pleased to term the "laches" of the plaintiff in bringing his action, or in obtaining leave to bring the same, and insists that by reason of such laches he ought to be deprived of the right to invoke the aid of the principle which the authorities, in my view of the case, seem to establish. But there are at least two perfect answers to this contention upon his part: In the first place, no such defense is set up in the answer, and the evidence of laches upon the part of the plaintiff is, at the most, exceedingly nebulous in its character; and, in the second place, if it were much stronger than it is, it would simply have presented a question of fact for the jury, and the learned counsel expressly stated upon the trial that there was no question of fact in the case which he desired to have submitted to the jury. The courts of this state have been inclined to construe the provisions contained in policies of insurance favorably to the insured. In Norton v. Insurance Co., 7 Cow. 649, Savage, C. J., says:

"The clause requiring proof of marine losses has been construed with considerable liberality. The courts have looked to the circumstances, and required no more information of the party than what appeared to be within his control."

The same liberal construction was in that case extended to a fire policy. And the language just quoted has met with approval in our court of last resort. Bumstead v. Insurance Co., supra. If, however, it is contended that this tendency to liberal construction is obviated by the legislative enactment requiring all insurance companies to adopt a standard and uniform policy, the answer is that policies thus formulated do contain provisions which are somewhat harsh and severe in their requirements of the insured, and when such provisions involve a forfeiture they ought still to receive a strict construction, even though they may conform to a fixed "standard." Griffey v. Insurance Co., 100 N. Y. 417, 3 N. E. 309; McNally v. Insurance Co., 137 N. Y. 398, 33 N. E. 475; Davis v. Insurance Co., 7 App. Div. 488, 40 N. Y. Supp. 248. And especially is this true of conditions relating to matters after the loss which are dessigned to define the manner in which accrued loss is to be established, adjusted, and recovered. See opinion of O'Brien, J., in McNally's Case, 137 N. Y. 398, 33 N. E. 476.

The conclusion of the matter, therefore, in my view of the case, is that the performance of the condition contained in the policy was rendered practically impossible by reason of the death of the insured, that its nonperformance was without any fault or laches upon the part of the plaintiff, and that, consequently, his failure to comply with such condition does not work a forfeiture of the policy, nor does it operate as a bar to this action. And this view of the case constrains me to dissent from that entertained by a majority of my brethren.

WARD, J. (dissenting). This is an action to recover upon a standard policy of insurance issued to Caroline Silvernail, a resident of Steuben county, N. Y., by the defendant, an insurance company in St. Louis, Mo., insuring some farm buildings "against all direct loss or damage by fire," in an amount specified, for the period of three years. The policy was issued August 1, 1889. The assured died December 2, 1891. A fire occurred April 20, 1892, destroying a barn, shed, and produce insured, which it was stipulated on the trial was worth the sum of $612, for which the same was insured. The insured left a will in which she appointed the plaintiff as her executor. The plaintiff proceeded in the surrogate's court to obtain probate of the will, which was contested by certain parties to the proceedings, and the will was not admitted to probate, in consequence thereof, until May, 1894, during which month letters testamentary were issued to the plaintiff. After the letters were issued, and on May 21, 1894, an attorney for the plaintiff communicated by letter with the defendant the claim of the plaintiff in this action, stating that before the loss Mrs. Silvernail had died; that there had been a contest over the will, which had just been admitted to probate,—and requested that the matter be paid at the earliest prac-

ticable date, and that he hear from the defendant on the subject. No attention was paid to this letter, and the plaintiff prepared proofs of loss as required by the policy, which were mailed to and received by the defendant in July following. No attention was paid to these proofs of loss, nor were they returned or objected to. The proofs of loss were mailed before the expiration of the 60 days from the time of the issuing of letters testamentary. This action was commenced October 29, 1894.

The chief contention of the defendant herein is that, the short limitation prescribed in the policy having long since expired, the plaintiff cannot recover. The clause in the policy upon that subject is as follows:

"No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity until full compliance by the insured with all the foregoing requirements, nor unless commenced within twelve months next after the fire."

"The foregoing requirements" are the usual conditions in fire insurance policies, providing for giving notice of the fire, separating the damaged and undamaged property, putting it in good order, making an inventory, and within 60 days after the fire furnishing proofs of loss; and also the insured to submit to examination under oath, produce books of account, vouchers, etc.; and in the event of disagreement the loss to be ascertained by appraisers; and then "the loss shall not become payable until sixty days after the notice, ascertainment, estimate, and satisfactory proof of the loss, herein required, have been received by this company, including an award by appraisers, when appraisal has been required." The result of this position is that notwithstanding the fact of the death of the assured, and that she had no legal representative to bring this action or furnish proofs of loss until within six months before this action was commenced, and although the claim is just in every respect, the plaintiff cannot recover. A proposition so startling and unjust may well challenge the most careful examination, to ascertain whether the law is so lame and impotent as to sanction this conclusion. The short limitation prescribed in the policy never began to run until the executor of Mrs. Silvernail was duly appointed. This is not a case where the statute began to run, and then its operation was suspended. The law on this subject is thus laid down by Judge Allen in Sanford v. Sanford, 62 N. Y. 555:

"It is directly adjudged that the statute does not commence to run against the representatives of a deceased creditor upon an obligation incurred or debt becoming due after his decease until administration is granted upon his estate, there being no cause of action until there is a party capable of suing. Murray v. East India Co., 5 Barn. & Ald. 204; Bucklin v. Ford, 5 Barb. 393; Cary v. Stephenson, 2 Salk. 421. In order to put the statute in motion, there must not only be a person in esse to sue, but a person to be sued. Davis v. Garr, 6 N. Y. 124; Levering v. Rittenhouse, 4 Whart. 130, per Nelson, J.; Wehman v. Insurance Co., 13 Wend. 267; Jolliffe v. Pitt, 2 Vern. 694; Douglas v. Forrest, 4 Bing. 686; Benjamin v. De Groot, 1 Denio, 155."

—To which may be added Richards v. Insurance Co., 8 Cranch, 84; Dunning v. Bank, 6 Lans. 296; Pendleton v. Pendleton, 6 Bush, 469; Word v. West, 38 Ark. 243; Hall v. Brennan, 64 Hun, 396, 19

N. Y. Supp. 623.    And the obvious reason of this rule is that there
is no one to bring the action, and therefore an action is an impossi-
bility, and the law never requires impossibilities of finite beings.
Semmes v. Insurance Co., 13 Wall. 158, in which case the insured
was unable to comply with the 12-months limitation in bringing an
action on the policy, on account of the Civil War, and the court
held that the insured was excused because the war rendered his
bringing an action impossible.    O'Neill v. Association, 63 Hun, 292,
18 N. Y. Supp. 22; Trippe v. Society, 140 N. Y. 26, 35 N. E. 316;
O'Brien v. Insurance Co., 63 N. Y. 113; Bumstead v. Insurance Co.,
12 N. Y. 92; Longhurst v. Insurance Co., 19 Iowa, 364.    But it is
claimed that the cases cited refer only to general statutes of limita-
tions, and not to special statutes, or to limitations created by con-
tract; and section 414 of the Code of Civil Procedure is cited, which
is as follows:

"Sec. 414. The provisions of this chapter apply, and constitute the only
rules of limitation applicable to a civil action or special proceeding, except in
one of the following cases:    (1) Where a different limitation is specially pre-
scribed by law or a shorter limitation is prescribed by the written contract of
the parties."

And it is argued that this excludes the cases just mentioned en-
tirely from the operation of the chapter of the Code on the subject
of limitation of actions.    Chapter 4.    We think the legislature
never intended by the clauses cited to exclude every other limitation,
whether created by statute or contract, from the operation of the
general provisions of this chapter, so far as they might be applica-
ble.    The purpose of the sections quoted is answered in the con-
struction that it was intended only to preserve the short limitations,
that might conflict in point of time with the limitations specially
prescribed in that chapter.    This view has been sanctioned by the
court of appeals in Hayden v. Pierce, 144 N. Y. 517, 39 N. E. 638,
where the question was whether section 401 of that chapter, declar-
ing that, when a cause of action accrued against a person who was
without the state, the action may be commenced against him within
the time limited therefor after his return to the state, applied to
an action upon a disputed and rejected claim against the estate of a
deceased person, and the short limitation of six months.    It was held
that it did, notwithstanding the clause we have cited, which excludes
short limitation from the operation of chapter 4; and O'Brien, J.,
argues with great clearness against the contention of the defendant
here, and holds that the general provisions of chapter 4 are applica-
ble to all limitations, and he says at page 518, 144 N. Y., and page
640, 39 N. E.:

"The very subdivision of that section now under consideration [section 414]
would seem to except from the operation of the chapter a case where a
shorter limitation is prescribed by the written contract of the parties.    This
permits the parties themselves to agree upon a shorter statute, but in such
a case what reason is there for supposing that the general provisions of chap-
ter 4 to which I have referred would not apply?    Indeed, it is scarcely possi-
ble to suppose that any other rule could have been contemplated by the fram-
ers of the statute, since to exclude these general provisions from the opera-
tion and application of a short limitation fixed by the contract of the parties
would in many cases work the grossest injustice.    There is a large class of

actions and proceedings, mostly founded upon some statute, and not specified in chapter 4, to which special limitations apply. * * * In many of them the limitation, if applied, without reference to the general provisions referred to, would work such hardship and injustice that it is reasonably certain that such a result was never within the contemplation of the legislature. It is difficult to perceive how any special limitation applicable to any class of actions can be administered without producing great injustice, unless the courts are at liberty to apply to such cases, when necessary, at least some of the general provisions mentioned, and which are necessary to a just application of all such statutes."

While the question in that case did not relate to limitations by contract, it did relate to a short limitation of another kind, and the case is conclusive upon the proposition that general provisions of chapter 4 are not limited as the words of section 414 might seem to imply. Judge O'Brien clearly shows in the case last cited that, while the contention of the defendant may be within the letter of the Code, it is not within its spirit; and we are guided by the spirit, and not by the letter. Richards v. Insurance Co., supra.

The defendant seems to rely greatly upon Wilkinson v. Insurance Co., 72 N. Y. 499. In that case the policy contained the provision that no suit should be maintained upon it unless commenced within 12 months after the loss, any statute of limitation to the contrary notwithstanding. The insured assigned his policy to the plaintiff. Two years and nine months after the loss, action was commenced upon the policy. The defense of the short statute being set up, the plaintiff proved that in an action brought against the plaintiff and defendant, the parties to this action, by a third party, the court had enjoined the company in that action from paying the plaintiff, and the plaintiff from receiving the loss. The company did not procure the injunction issued, nor was it served upon them, nor had they notice that it was issued. The court properly held that this constituted no defense; the injunction only restrained the plaintiff from receiving the loss. The plaintiff was in no manner restrained from bringing his action upon the policy, and the case went off on this point. Some general remarks are made by Judge Andrews to the effect that:

"The provision fixing the time within which an action must be brought is distinct, definite, and unqualified. The contract contains no saving of the right of action after the expiration of the year from the time of the loss, for any cause whatever; and unless bringing of the action within the time limited by the contract is waived by the defendant, or was excused and made impossible by the act of God or of the law, the remedy of the plaintiff has been lost."

In Hall v. Brennan, affirmed in 140 N. Y. 409, 35 N. E. 663, where B. on September 17, 1880, had made his promissory note on 12 months to S., B. died August 12, 1887, leaving a will, which, after a contest, was admitted to probate on March 23, 1889, upon which letters testamentary were issued to his executors. On March 21, 1890, action was commenced against the executors of B. Held that, from the time of the death of B. to the issue of letters testamentary, there was no person in being against whom the plaintiff could have brought their action; that this amounted to a statutory prohibition as to the plaintiff's right to sue, and the period between the death and

the issue of letters testamentary was no part of the time limited for the commencement of the action.    This case also disposes of a further contention of the defendant, that there was laches on the part of those succeeding to the interest of the assured in the loss, in not procuring the appointment of a temporary administrator pending the contest on the probate of the will.    The court says at page 397, 64 Hun, and page 624, 19 N. Y. Supp.:

"It is no answer to this view to say that the plaintiffs might have applied for a temporary administrator under section 2668 of the Code of Civil Procedure. They could not procure such appointment as a matter of right.  It is expressly made dependent on the discretion of the surrogate.  The law did not require them to make the application under the penalty of losing their debt."

The learned counsel for the defendant contends that, the short limitation in the policy being a matter of strict contract between the parties, the death of the insured, though an act of God, did not excuse the failure to bring the action within the year, as that was a contingency that should have been stipulated in the contract, if it were to be relied upon; and he cites a number of cases where parties have stipulated to do a work, or furnish materials, or perform a contract, as to matters of property, which could be done by persons other than the party contracting to do it.    In Dexter v. Norton, 47 N. Y. 64, the cases where death excuses are considered, and the distinction is drawn between acts of a personal character, that must be performed by the contracting party, such as promise to marry, paint a picture, deliver a particular horse, hold a concert, and adds:

"The principle seems to us to be that, in contracts in which the performance depends on the continued existence of a certain person or thing, a condition is implied that the impossibility of performance arising from the perishing of the person or thing shall excuse the performance; and the reason given for the rule is, because from the nature of the contract it is apparent that the parties contracted on the basis of the continued existence of the particular person or thing."

And on page 64 the court says that there is—

"A variety of cases where the courts have implied a condition in the contract itself, the effect of which was to relieve the party when the performance had, without his fault, become impossible."

It seems to be conceded that the defendant might waive this short limitation.    Why?    There is no such condition in the contract, but there is an implied condition attached to every contract that the party seeking the benefit of it may waive it, and he may put himself in a condition where he will be estopped from insisting upon the performance of the contract.    So, in reason, there was an implied condition attached to this contract, that there should be at the time of the fire some party that could bring the action, and that until, in the course of legal procedure, the representatives of the insured, who had been removed by the act of God, could bring the action, this short and arbitrary limitation should not commence running. It is difficult to see how the insured was guilty of laches.    There is no laches in the grave.    The delay in appointing the representatives of the insured is explained, and in our opinion the laches on their part, if any, was not sufficient to bar their right to recover.

Our examination of this question thus far has proceeded upon the assumption that this provision of the standard policy was exclusively a matter of contract between the parties, to be considered like any other contract in determining the rights of the parties.    Under chapter 488 of the Laws of 1886 the superintendent of insurance was directed to prepare a form of fire insurance policies, which should contain stipulations and agreements that were to bind the parties that should take insurance in this state; and it was further provided that after May 1, 1887, no other form of policy should be in use, except the one thus prepared.    So that the policy we are considering was established by law, and this provision concerning the bringing of actions is not a matter of agreement between the parties, primarily, but a command of the law; that is to say, any one seeking to have his property insured, in this state, against fire, must agree to this short limitation, and he cannot agree to any other.    So that the statute has said to him, "if you take an insurance, you must make this agreement, or, rather, subscribe to this condition."    The party thus subscribes to this condition under the compulsion of the law.    And the limitation, though a contract in form, is a limitation created by law, and should be governed by the same principles that control other legal limitations.    The standard policy was required, in the judgment of the legislature, as the panacea for many existing ills; and they are well described by Andrews, J., in Quinlan v. Insurance Co., 133 N. Y. 365, 31 N. E. 36:

"The act [chapter 488 of the Laws of 1886] providing for a uniform policy, known as the 'Standard Policy,' and which makes its use compulsory upon insurance companies, marks a most important and useful advance in legislation relating to contracts of insurance. The practice which prevailed before this enactment, whereby each company prescribed the form of its contract, led to great diversity in the provisions and conditions of insurance policies, and frequently to great abuse. Parties taking insurance were often misled by unusual clauses and obscure phrases concealed in a mass of verbiage, and often so printed as almost to elude discovery. Unconscionable defenses based upon such conditions were not infrequent, and courts seemed sometimes to have been embarrassed in the attempt to reconcile the claims of justice with the law of contracts. Under the law of 1886, parties are not permitted to insert conditions in policies at their will. The policies they now issue must be uniform in their provisions, arrangement, and type. Persons seeking insurance will come to understand to a greater extent than heretofore the contract into which they enter."

An important change was created by the statute referred to, which was in force at the time this insurance policy was issued, and at the death of the insured.    Many of the decisions, therefore, in regard to construing policies, that have been cited in this case, are inapplicable, and we must construe this policy in the light of these changed conditions and the purpose of the legislature.    One of the conditions imposed is that the action shall be brought within 12 months next after the fire, but that condition must be construed in the light of other provisions of the policy.    If by those other provisions the defendant postponed, in taking advantage of them, the right of the insured to sue, the time so taken by the defendant should not be taken out of the 12 months.    The short limitation should only commence when the action could be brought under the

conditions resulting from the policy itself.    In other words, suppose after the fire the defendant should so delay the proceedings to ascertain the loss by examining the plaintiff from time to time on oath, examining his books from time to time, and taking advantage of other provisions whereby it could delay the time when the plaintiff could sue beyond the 12 months, so that the plaintiff's cause of action really did not accrue during the short period limited; would any one contend that the defendant could avail itself of the short limitation under such circumstances?    The standard policy certainly does not contemplate any such outrage.    And the trend of modern decisions is to construe the provisions of the standard policy liberally, and to secure the ends of justice.    Ladd v. Insurance Co., 147 N. Y. 478, 42 N. E. 197; Robbins v. Insurance Co., 149 N. Y. 477, 44 N. E. 159; Bernard v. Insurance Co. (Sup.) 39 N. Y. Supp. 356; Dougherty v. Insurance Co. (Sup.) 38 N. Y. Supp. 258.    In Steen v. Insurance Co., 89 N. Y. 316, it was provided that the defendant insured against all such immediate loss or damage as might occur by fire to the property insured, and it was provided that:

"No suit or action of any kind against this company [the defendant there] for the recovery of any claim upon, under, or by virtue of this policy shall be sustained in any court of law or chancery unless such suit or action shall be commenced within the term of twelve months next after such loss or damage shall occur; and, in case any such suit or action shall be commenced against this company after the expiration of twelve months next after such loss or damage shall have occurred, the lapse of time shall be taken and deemed conclusive evidence against the validity of the claim thereby so attempted to be enforced, any statute of limitation to the contrary notwithstanding."

The policy in this case contained similar provisions to the one in the case at bar as to ascertaining the loss, and the procedure that the defendant might resort to in the premises before the claim should be due; and the court held that the 12-months limitation did not commence until the claim was due and the action could have been brought, and cited Ames v. Insurance Co., 14 N. Y. 253; Mayor, etc., of New York v. Hamilton Fire Ins. Co., 39 N. Y. 45; Hay v. Insurance Co., 77 N. Y. 235,—containing a similar clause in the policy, which had held in the same direction; and Judge Danforth pithily says that:

"The defendant having made the doing of certain things, and a fixed lapse of time thereafter, conditions precedent to the bringing of an action, the parties must be deemed to have contracted in reference to a time when the insured, except for that contract, might be in a condition to bring an action. Under any other construction, the two conditions are inconsistent with each other."

The defendant cites King v. Insurance Co., 47 Hun, 1, as an authority for the position that under all conditions the 12 months must commence from the time of the fire.    The policy in that case was issued in 1882, and contained a provision very similar to the one in the case of Steen v. Insurance Co., supra, the only difference being that in the latter case the 12 months commenced next after such loss or damage shall have occurred, while in the former case it was to commence next after the fire shall have occurred; and the court in the former case attempts to draw a distinction at general term between

the two phrases or statements. It seems to us that this is a distinction without a difference. The loss is from the fire. The loss occurs at the same time as the fire. The damage is by the fire, where the goods or property are not totally destroyed, and that is created by the fire. It will be seen, however, that the condition in the King Case, just cited, is very sweeping. After stating that the 12 months should be next after the fire had occurred, it provides that a failure to commence the action after the lapse of the 12 months "shall be taken and deemed as conclusive evidence against the validity of such claim." There is no such provision in the case at bar, and the omission of such provision was evidently intentional, to avoid the imposition of just such a hardship as the defendant is attempting to enforce in this action. But we need not attempt to reconcile the old cases. We are therefore to construe the policy in the case at bar in view of the purposes of the legislature in providing a uniform statute for the protection of the people and the insurance companies alike, so that neither by circumvention, nor fraud, nor unconscionable defenses either party could deprive the other of justice and substantial rights; and we are of the opinion that the true construction to be placed upon this policy is that given by Judge Danforth, above referred to. No injustice can come from this conclusion, and much injustice may be prevented, and a reasonable construction given to a condition otherwise harsh and oppressive. This view has been recently taken by the supreme court of the state of Nebraska in Insurance Co. v. Davis, 59 N. W. 698, where, under a policy providing that no action therein can be maintained unless commenced within 6 months after the fire, and that the damage should be paid 60 days after satisfactory proofs of loss shall have been received by the company, it was held that an action on the policy was not barred if commenced within 6 months after the expiration of the 60 days. And the United States court of appeals, in Steel v. Insurance Co., 7 U. S. App. 325, 2 C. C. A. 463, and 51 Fed. 715, have held in the same direction. The 12-months limitation not having commenced until the service of the proofs of loss by the plaintiff as executor, and this action having been brought within a few months thereafter, under the construction of the contract which we think should be given it, the action could be maintained.

In both aspects of the case, as we have considered, the trial court was right in directing the verdict for the plaintiff; and the motion for a new trial should be denied, with costs, and judgment should be entered upon the verdict as directed by the court.